## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHRISTOPHER THOMPSON, individually
and on behalf of all others similarly situated,

      Plaintiffs,

v.

SUBARU OF AMERICA, INC., and
SUBARU CORPORATION,

      Defendants.

Civil Action No. 2:18-cv-

**CLASS ACTION COMPLAINT
AND REQUEST FOR JURY TRIAL**

Plaintiff Christopher Thompson (hereinafter "Thompson" or "proposed class representative") through his counsel, on behalf of himself, all others similarly situated and proposed classes allege as follows:

### INTRODUCTION

1.    Subaru Corporation[1] (hereinafter "Subaru") and Subaru of America, Inc. (hereinafter "SoA") (hereinafter collectively referred to as "defendants") withheld material disclosures concerning engine components known to the defendants to be defective and used in the following vehicles: 2009 through and including 2014 model year Impreza WRX and WRX STi (hereinafter "class vehicles" or "class vehicle").  Engines used in class vehicles include but are not limited to engine codes EJ255 and EJ257 (hereinafter "class engines" or "class engine").  The proposed class representative and members of the proposed classes request, monetary damages, including multiple damages where applicable, injunctive relief, court costs and attorney fees against the defendants based upon their breach of express warranty, breach of implied warranty, misrepresentation, unfair and deceptive business practices and unjust enrichment under the laws of California and the Magnuson-Moss Warranty Act.

---

[1] Subaru Corporation, a Japanese business entity was formerly named Fuji Heavy Industries, Ltd.  Effective April of 2017 it became Subaru Corporation and assumed all assets and liabilities of its corporate predecessor Fuji Heavy Industries, Ltd.

## CLASS ENGINE INTERNAL DEFECT

2.     Passenger motor vehicle engines should last a minimum of 120,000 miles in a modern automobile such as the class vehicles.  This proposition is demonstrated by the defendants' Owner's Manual and Warranty & Maintenance Booklet materials accompanying class vehicles, other predecessor engines manufactured by the defendants and performance of comparable competitor vehicles.  The internal components of the class engine prematurely fail at low miles as described in this complaint.

3.     Subaru and SoA introduced the class engines in the United States market in late 2007 for the 2008 model year.  Class engines are predisposed to premature engine failure.[2]

4.     Class vehicles are defective with respect to improperly designed and manufactured pistons and an engine management system and PCV (positive crankcase ventilation) system that subjects class engines engine to premature catastrophic engine piston ringlands failure (the "Piston Ringlands Defect").[3]

5.     WRX and WRX STi engines are high performance versions of the 2.5 liter displacement EJ series engines used in other model Subaru vehicles including but not limited to the Forrester, Legacy and Outback.[4]  These performance modifications nearly doubled the horsepower for

---

[2] All 2.5 liter turbo engines manufactured in certain months experienced engine quality control issues requiring SoA to issue an immediate a stop sale order on April 7, 2008 for 2008-2009 Subaru vehicles sold in the United States.  The purpose of the stop sale was to allow Subaru and SoA to investigate "Engine Knocking Noise" affecting the 2.5 liter engines after "[a]n internal investigation confirm[ed] an internal wear issue on the failed units."  Subaru also developed a modification to the Engine Control Module software logic that improved combustion management to reduce ringland failure at higher engine revolutions.

[3] Piston ringlands refer to the engine piston separations between the piston rings.  *See* Figure 1 depicting exemplar EJ-25 piston and piston nomenclature.  Figure 2 depicts a Subaru EJ-25 piston with damaged ringlands.

[4] "WRX" is an abbreviation for World Rally eXperimental.  "STi" is an abbreviation for Subaru Tecnica international, a Subaru activity that develops Subaru racing vehicles.  Since 1993, the defendants invested tens of millions of dollars preparing Impreza factory rally cars to compete in the WRC (World Rally Championship) series.  The cumulative worldwide TV audience in 2016 for WRC broadcasts was more than 700 million viewers.  These rallies provide an all-important marketing

WRX and WRX STi engines over the standard base 2.5 liter engine.[5]  These performance modifications that created substantially increased power output did not include necessary internal engine modifications to prevent damage to the piston ringlands.  This is particularly true since the 2.5 liter engine used for class engines was itself was derived from a lower output earlier production 2.0 liter engine that had forged pistons.[6]  Earlier 2.0 liter WRX and STi engines incorporated more durable and stronger (and more expensive to manufacture) forged pistons.  The 2.0 liter and 2.5 liter high output class engine share substantially similar piston ringland construction but are constructed differently.  The 2.0 liter STi engine had more durable forged pistons while class engines use more brittle cast pistons.



**FIGURE 1**
**SUBARU EJ-25 PISTON REMOVED FROM CLASS**
**ENGINE WITH NO DAMAGE TO RINGLANDS**

program for the WRX and WRX STi vehicle sales worldwide by showcasing high performance Subaru vehicles that demonstrate rugged durability in international competition.  *See* http://dp.subaru.com.  As described in this complaint, class engines do not have this purported durability.
    [5] EJ25 series engines range in SAE rated horsepower from 165 to 320 depending on the variant.
    [6] Interestingly, 2.5 liter WRX and WRX STis sold in Japan and other countries outside of the United States have engines with forged pistons.

6.    Inadequate class engine piston ringland durability was caused by casting the class engine pistons from hypereutectic aluminum silicon (Al-Si) alloy. While this alloy has some strength attributes over conventional cast aluminum pistons, Al-Si pistons and in particular piston ringland are more brittle. This Al-Si materials selection and cast construction method resulted in insufficient strength pistons in class engines

7.    Another contributing cause to class engine failure was an inadequate PCV system that allowed excessive engine crankcase oil vapors to be introduced into the engine combustion chambers thereby lowering the overall fuel/air octane mixture. This causes increased combustion forces acting on the piston through a phenomenon know as detonation. Detonation is a well-known cause of internal engine component damage particularly including piston and piston ringland failure.[7] *See* Figure 2 depicting class engine piston with damaged ringlands, *infra*.

8.    Failure of class engines due to the Piston Ringland Defect results in sudden power loss and/or stalling that severely compromises the owner's ability to maintain vehicle control. The defective class engine components and engine management system also causes sudden and catastrophic engine self-destruction as overheated internal parts seize.

9.    The failures in the class engines due to the Piston Ringland Defect pose a serious safety issue while the vehicle is being operated since there is loss of engine power without warning and the loss of power-assisted steering and reduced braking caused by lack of engine vacuum if the engine stalls. In class vehicles equipped with manual transmissions, the drive wheels will lock and cause loss of directional stability and steering if the engine stalls and the clutch is not immediately disengaged.

10.    The Owner's Manual and Warranty & Maintenance Booklet materials accompanying class vehicles do not contain any maintenance or service information for class engine pistons or piston ringlands that are defective. A modern passenger vehicle internal combustion engine is reasonably

---

[7] *See generally* https://en.wikipedia.org/wiki/Engine_knocking

expected by the defendants, the proposed class representative and proposed class members to last the serviceable life of the vehicle that is in excess of 120,000 miles.[8]  Despite this, class engines in class vehicles often fail at less than 50% of their reasonably expected useful life.[9]



**FIGURE 2**
**SUBARU EJ-25 PISTON REMOVED FROM CLASS**
**ENGINE WITH DAMAGED RINGLANDS**

---

[8] The Owner's Manual and Warranty & Maintenance Booklet materials for class vehicles have maintenance schedules that extend to 120,000 miles. There is no scheduled maintenance or replacement recommended for class engine internal components at issue in this complaint.

[9] It is estimated by one Subaru WRX and WRX STi enthusiast website that 25 percent of all 2.5 liter STi engines experience premature ringland failure. Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class engines eventually became public information.  Premature class engine failures caused by the Piston Ringland Defect can cost as much as approximately $8,000.00 and $12,000.00 to remedy if a new engine block is required.

# JURISDICTIONAL AND VENUE STATEMENT

11.     Diversity jurisdiction exists under 28 U.S.C. § 1332(a), (d) and 28 U.S.C. § 1367.  Class jurisdiction exists by virtue of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711–1715, since there are in excess of 100,000 class members and the proposed class representative and proposed class members' aggregate damages exceed $5,000,000.00, exclusive of interest and costs.  Minimal diversity exists between the parties with residency in different states.  The jurisdictional requirements of the state Magnuson–Moss Act claims alleged herein as set out in 15 U.S.C. § 2310(d)(1)(A) are satisfied by CAFA diversity jurisdiction with respect to such state law claims.

12.     The defendants are persons under this jurisdiction's long-arm statute.  In the United States, SoA acts as the alter ego and/or agent of Subaru as well as the warrantor with respect to the class vehicles.  *In personam* jurisdiction exists over the defendants under this jurisdiction's so-called "long arm statute."  The defendants directly and through their agents regularly transact business and otherwise derive substantial revenue in this jurisdiction and throughout the entire United States.  SoA also maintains offices and facilities in the United States including a manufacturing plant in Indiana that has constructed passenger automobiles for more than thirty years.[10]  Subaru corporate officers, engineers and other employees regularly communicate with and visit the SoA's corporate offices in New Jersey and the Indiana assembly plant.  The defendants also conduct continuous and systematic economic activities in this jurisdiction and throughout the United States.  The defendants intentionally and purposefully placed their vehicles and/or components in the stream of commerce in this

---

[10]  *See* http://subaru-sia.wixsite.com/indiana (last checked February 12, 2018). "Subaru of Indiana Automotive, Inc. (SIA), a subsidiary of Subaru Corporation, is home of North American Subaru production. Models built at the Lafayette, Indiana plant include the Subaru Legacy, Subaru Outback and Subaru Impreza. In 2018, the Subaru Ascent will be added to SIA's production line. SIA employs over 5,600 Associates, and every Associate is committed to quality, safety and environmental stewardship."

jurisdiction and throughout the United States. Subjecting the defendants to *in personam* jurisdiction in this jurisdiction does not violate the defendants' due process rights and comports with requirements of fair play and substantial justice.

13. Venue is conferred by 28 U.S.C. § 1391 as the defendants regularly and purposefully conducted business in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## THE PARTIES

14. Plaintiff Thompson is an adult individual who purchased a pre-owned 2009 Impreza WRX STi from a California Subaru dealer in 2011. Thompson resides in California. Thompson's class vehicle required premature replacement of the engine due to the Piston Ringland Defect at 68,995 miles in April of 2015. Thompson spent more than $2,000.00 replacing the class engine short block in his vehicle after contributions by a third party limited lifetime powertrain protection policy which Thompson purchased.

15. Defendant Subaru is a duly organized Japanese corporation with a principal place of business in the city of Tokyo, Tokyo prefecture, Japan. Subaru designed, manufactured and tested the class engine and engine management system incorporated in class vehicles including but not limited to Thompson's vehicle. Subaru drafted and published the Owner's Manual and Warranty & Maintenance Booklet materials that accompanied class vehicles and/or were published on the Internet. Subaru is the parent company of SoA.

16. Defendant SoA is a duly organized New Jersey corporation with a principal place of business located in Cherry Hill, New Jersey. SoA manufactures, imports, distributes and/or sells Subaru motor vehicles including all class vehicles and also acts as the authorized representative of Subaru in the United States. SoA operates its national marketing, warranty, consumer relations and engineering offices from its New Jersey facility. SoA also controls all other aspects of its United States activities from New Jersey including class vehicle importation.

17.     SoA sells and distributes vehicles manufactured by both Subaru and SoA throughout the United States via a network of over six hundred independent authorized dealerships.

18.     SoA drafted and published the Owner's Manual and Warranty & Maintenance Booklet materials that accompanied class vehicles and/or were published on the Internet.  SoA acted, and continues to act, as the warrantor of vehicles constructed by both defendants sold in the United States.

19.     At all relevant times, SoA acted as an authorized agent, representative, servant, employee and/or alter ego of Subaru performing activities concerning but not limited to advertising, marketing, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Subaru vehicles in the United States, including substantial activities that occurred within this jurisdiction.  Subaru and SoA also share upper echelon corporate managers who operate in dual leadership capacities for each business entity.  There is sufficient overlapping and intertwining of the activities of Subaru and SoA in the United States that the principles of corporate separateness should not be applied.

20.     New Jersey has the most significant relationship to the conduct that gave rise to this litigation since SoA's wrongful activities were orchestrated at its New Jersey headquarters.  New Jersey law should govern all substantive aspects of this litigation.  That conduct includes concealing the class vehicles' defects described in this complaint and systematic activities to deny warranty coverage to defective engine components that should have been replaced under the new vehicle warranty without cost to the class vehicles owner.

## CLASS ACTION ALLEGATIONS

21.     The proposed class representative brings this proposed action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of himself and all members of the proposed class and subclasses (or any other class authorized by the Court) defined as follows:

> **Nationwide Class**: All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the United States, its possessions and territories and sustained monetary loss and/or diminution of

class vehicles value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed class members"). Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, the defendants' counsel and all respective immediate family members of the excluded persons and entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**California Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in the State of California and sustained monetary loss and/or diminution of class vehicles value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed California subclass members"). Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

## Numerosity of the Class: Fed. R. Civ. P 23(a)(1).

22.     The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20. It is estimated there are in excess of approximately 250,000 class vehicles imported into and/or manufactured in the United States. Although the number, location and identity of all proposed class members cannot be presently ascertained, this information is obtainable through discovery from the defendants.

## Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).

23.     Common questions of law and fact exist as to all members of the proposed class and predominate any and all issues of law and fact affecting individual members of the proposed class. These issues include but are not limited to:

(a)     Whether class engines contained the Piston Ringland Defect and were defective in materials, workmanship, manufacture, and/or design, so as to subject the engine to premature failure;

(b)     Whether class engines sustained damage directly or indirectly by premature failure of the internal components due to the Piston Ringland Defect;

(c)     Whether class vehicles were sold with an Owner's Manual and Warranty & Maintenance Booklet materials that incorporated incorrect inspection, service and scheduled replacement intervals for the engine;

(d)     Whether the defendants breached their express warranties (including but not limited to the powertrain limited warranty) in that class vehicles were defective as a result of the Piston Ringland Defect with respect to engine materials, workmanship, manufacture and/or design;

(e)     Whether the defendants breached their implied warranties in that class vehicles were defective as a result of the Piston Ringland Defect with respect to materials, workmanship, manufacture, or design;

(f)     Whether the defendants intentionally or negligently misrepresented material facts concerning the characteristics of class engines;

(g)     Whether the defendants committed unfair and deceptive business act practices by failing to inform owners of class vehicles prior to purchase and/or during the post-sale express warranty period that class engines were defective as a result of the Piston Ringland Defect and would fail shortly after the warranty period expired, and that this defect posed a significant safety hazard;

(h)     Whether the defendants were unjustly enriched by their warranty breaches and deceptive and/or unfair conduct described in this complaint;

(i)     Whether proposed class members are entitled to injunctive relief pursuant to Rule 23(b)(2);

(j)     Whether the Court should establish a constructive trust funded by the benefits conferred upon the defendants by their wrongful and unlawful conduct; and,

(k)     Whether proposed class members are able to economically afford individual litigation against the defendants.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

24.     The proposed class representative' claims and defenses are typical of the claims and defenses of proposed class members.  Class claims arise out of ownership or lease of class vehicles as defined in ¶ 1.  The defendants in this proposed action have no claims or defenses unique to or different from the proposed class representative.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

25.     The proposed class representative currently has no conflicting interests with any other proposed class member.  The proposed class representative will fairly and adequately protect the interests of the proposed subclasses.  The proposed class representative's claims and the proposed class members' claims are so interrelated that the interests of the proposed class members will be fairly and adequately protected in their absence.  Proposed class counsel have, in aggregate, over 60 years of experience concentrating in complex automotive products liability, and both have been appointed class counsel in other proceedings.

**Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3).**

26.     Maintenance of a class action in one court is the most economical procedural device to litigate the class vehicles claims for class vehicles owners and the defendants.  Prosecution of separate actions by individual members of the class could create risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class as recognized by Fed. R. Civ. P. 23(b)(1)(A).

27.     Prosecution of separate actions by individual members of the class could create risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

28.     There is a substantial likelihood that the defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

29.     Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

**DEFENDANTS' KNOWLEDGE OF**
**THE CLASS ENGINE DEFECT**

**Complaints To The National Highway Traffic Safety Administration**

30.     The National Highway Traffic Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") maintains a database of complaints filed by consumers concerning defects in their respective motor vehicles and vehicle equipment monitored by defendants' quality control personnel.  The NHTSA-ODI website allows consumers to "identify and report problems you might be having with your vehicle, tires, equipment or car seats." *See* https://www-odi.nhtsa.dot.gov/ivoq/ (last accessed November 16, 2017) ("If you think you have a problem, we want you to tell us about it.").  A sampling of the numerous complaints on record submitted by owners of class vehicles and reported to the NHTSA demonstrates that the class vehicle engine defect is widespread and constitutes an unreasonable safety hazard:[11]

**Date Complaint Filed:** 6/15/2009                    **Date of Incident:** 01/29/2009

**Component(s):** ENGINE AND ENGINE COOLING                    **NHTSA ID Number:** 10273870

**Consumer Location:** ORLANDO, FL

---

[11] NHTSA-ODI does not share complainants' personal information with the general public. A complaint is only added to a public NHTSA database after removal of all information from complaint fields that personally identify a complainant.  NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed multi-page contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA.  There are penalties for submitting false statements.

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

**Details**                                                                                    **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR896X8L...

**SUMMARY:**

I OWN A 2008 STI AND HAVE JUST UNDER 6,000 MILES ON THE ODOMETER. I BOUGHT THE VEHICLE NEW WITH JUST UNDER 200 MILES ON IT IN DECEMBER OF 2008. IN JANUARY OF 2009, I BEGAN TO SEE WHITE SMOKE COMING OUT OF MY EXHAUST ON STARTUP. I HAD JUST OVER 1,200 MILES AT THE TIME. MY ENGINE FAILED SUFFERED A FAILURE AT JUST UNDER 2,000 MILES. SUBARU REPLACED THE ENGINE UNDER WARRANTY AND SENT ME ON MY WAY. FAST FORWARD TO JUNE OF 2009 AND NOW I'M BEING TOLD MY ENGINE HAS AGAIN FAILED DUE TO THE PISTON RINGLANDS CRACKING AND BREAKING OFF. THIS IS A WIDELY REPORTED ISSUE FROM 2008 STI OWNERS AND WOULD SEEM TO INDICATE A POSSIBLE DEFECT IN THE PISTON DESIGN. *TR

                              *                              *                              *

**Date Complaint Filed:** 8/03/2011                                      **Date of Incident:** 6/10/2011

**Component(s):** ENGINE AND ENGINE COOLING                         **NHTSA ID Number:** 10416892

**Consumer Location:** JACKSONVILLE, FL

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

**Details**                                                                                    **0 Available Documents**

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** Not Available

**SUMMARY:**

THE CAR WAS SMOKING ON COLD STARTS ONLY. PISTON # 4 RINGLAND CRACKED AT 33,000 MILES ON THE CAR. SHORTBLOCK HAD TO BE REPLACED. *KB

                              *                              *                              *

**Date Complaint Filed:** 07/28/2010                                     **Date of Incident:** 05/05/2008

**Component(s):** ENGINE AND ENGINE COOLING                         **NHTSA ID Number:** 10345791

**Consumer Location:** CLEVELAND, MO

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

**Details**  0 Available Documents[12]

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Details**  0 Available Documents

**Crash:** No          **Fire: No**          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89678L...

**SUMMARY:**

THE SUBARU STI SERIES KNOWN AS THE GR IS PRONE TO BREAKING PISTON RINGLANDS IF
DETONATION EVER OCCURS, WHICH HAPPENS EASILY ON THIS ENGINE, WHICH IS NOW TUNED
FOR MORE POWER YET FEWER EMISSIONS. THE RINGLAND BREAKAGE RESULTS IN POWER LOSS
AND EXTREME OIL CONSUMPTION DUE TO BLOWBY AND IF NOT NOTICED IN TIME WILL LEAD TO
ENGINE SEIZING. IF DRIVEN AGGRESSIVELY ENOUGH, THIS SEIZING DUE TO OIL LOSS CAN HAPPEN
IN AS FEW AS 10 MINUTES. IT IS ALSO POSSIBLE FOR THE RINGLAND BREAKAGE TO BE SO SEVERE
THAT THE ENGINE SPRAY-COATS A LARGE SECTION OF ROADWAY, MAKING FOR THE EQUIVALENT
OF A BLACK ICE CONDITION FOR OTHER TRAFFIC. A POTENTIAL SAFETY HAZARD I'M NOT AWARE
OF HAPPENING WITH THIS VEHICLE YET BUT STILL POSSIBLE IS NOT ONLY THE LOSS OF CONTROL
SHOULD THE ENGINE SEIZE AND THE DRIVER NOT BE MECHANICALLY SAVVY ENOUGH TO KNOW
DISENGAGING THE CLUTCH WILL GIVE HIM BACK SOME CONTROL AND REDUCE THE CHANCES OF
BEING REAR-ENDED WHEN THE CAR TRIES TO STOP VERY RAPIDLY WITHOUT THE BRAKES AND
THEREFORE THE BRAKELIGHTS BEING USED. DESPITE THE LARGE NUMBERS OF THESE FAILURES
BEING REPORTED, SUBARU DENIES A PROBLEM EXISTS. I HAVE ALL OF THE PARTS FROM MY
ORIGINAL FAILED ENGINE WHICH ALSO SHOWED OTHER ASSEMBLY PROBLEMS. I WILL HAVE THE
PIECES OF MY 2ND ENGINE WHEN I PICK THE CAR UP SOON. MANY MECHANICS ARE OF THE
OPINION MANY OF THESE ENGINES HAVE BROKEN RINGLANDS AND THE OWNERS DON'T KNOW IT.
WE ALSO FEEL THE PROBLEM IS AGGRESSIVE OEM TUNING WHILE USING WEAK CAST PISTONS AS
IT'S DETONATION, EVEN A SINGLE EVENT, THAT BREAKS THEM. AND IT'S INCONCEIVABLE AN
ENGINE WITH THIS DAMAGE WOULD PASS AN EPA EMISSIONS TEST. *TR

                    *                    *                    *

**Date Complaint Filed:** 12/09/2009                    **Date of Incident:** 04/15/2009

**Component(s):** ENGINE AND ENGINE COOLING                    **NHTSA ID Number:** 10295147

**Consumer Location:** UNCASVILLE, CT

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
| --- | --- | --- |
| SUBARU | IMPREZA STI | 2008 |

**Details**  0 Available Documents

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR896228L...

MY PISTON #4 HAD RINGLAND FAILURE OF BOTH RINGLANDS ON SAID PISTON IN MY 2008 SUBARU
WRX STI. *TR
                    *                    *                    *

**Date Complaint Filed:** 03/04/2009                    **Date of Incident:** 01/20/2009

**Component(s):** ENGINE AND ENGINE COOLING                    **NHTSA ID Number:** 10260756

**Consumer Location:** BAYVILLE, NJ

<u>All Products Associated with this Complaint</u>

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA | 2008 |

<u>Details</u>                                                                                                          0 Available Documents

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR896X8L...

**SUMMARY:**

SMOKE COMING FROM THE EXHAUST, ROUGH IDLE, OIL CONSUMPTION WERE MY FIRST SIGNS. THE DEALER WOULDN'T DO A COMPRESSION CHECK ON THE MOTOR SINCE THERE WAS NO CHECK ENGINE LIGHT ON, SO I HAD TO PAY WITH MY OWN CASH AND TAKE IT TO A PRIVATE SHOP AND FOUND OUT THAT IN FACT CYLINDER #2 HAD A SHOT RINGLAND. THEY REPLACED THE PISTON BUT THE MOTOR DOESN'T SEEM TO BE RIGHT STILL SINCE I HAVE A CAR THAT WAS INVOLVED IN A "STOP SALE" THAT INVOLVED SOME ENGINES HAVING SOME DEBRIS IN THE MOTOR AND WAS CAUSING KNOCKING AND THROWING BEARINGS. SUBARU SHOULD HAVE REPLACED THE SHORT BLOCK BUT DIDN'T. *TR

              *              *              *

**Date Complaint Filed:** 10/28/2009                                          **Date of Incident:** 10/01/2009

**Component(s):** ENGINE AND ENGINE COOLING                    **NHTSA ID Number:** 10290169

**Consumer Location:** IRVINE, CA

<u>All Products Associated with this Complaint</u>

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2008 |

<u>Details</u>                                                                                                          0 Available Documents

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89618L...

**SUMMARY:**

AT 15,500 MILES, MY 2008 SUBARU STI EXPERIENCED A RINGLAND FAILURE ON THE #4 PISTON. THIS WAS VERIFIED VIA A COMPRESSION/LEAKDOWN TEST. A LONGBLOCK REPLACEMENT WAS APPROVED BY SUBARU OF AMERICA. MY MAIN CONCERN, WITHOUT TAKING ENGINE COMPONENTS OFF, THIS MILD CRACKED RINGLAND WAS ALMOST UN-DETECTABLE. THERE WAS VERY LITTLE DEGRADATION IN PERFORMANCE, FOR RUNNING ON 3.5 OF 4 CYLINDERS. IN ADDITION, MY MECHANIC ALSO FOUND FUEL IN THE OIL PAN. *TR

              *              *              *

**Date Complaint Filed:** 03/04/2009                                          **Date of Incident:** 03/01/2009

**Component(s):** POWER TRAIN                                            **NHTSA ID Number:** 10260749

**Consumer Location:** UNKNOWN

<u>Products Associated with this Complaint</u>

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA | 2008 |

**Details**                                                                    0 Available Documents

**Crash:** No          **Fire:** No          **Number of Injuries:** 0     **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** Not Available

**SUMMARY:**

ENGINE STARTED STUTTERING AND WOULD ALMOST DIE WHEN TRYING TO ACCELERATE, THEN
STARTED BLOWING SMOKE OUT TALE PIPE. CAR HAD 3400 MILES. DEALER DIAGNOSED AS
RINGLAND/PISTON FAILURE. *TR

              *                 *                 *

**Date Complaint Filed:** 11/03/2009                                           **Date of Incident:** 10/17/2009

**Component(s):** ENGINE AND COOLING                                          **NHTSA ID Number:** 10290784

**Consumer Location:** WILLIAMSPORT, PA

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZA STI | 2009 |

**Details**                                                                    0 Available Documents

**Crash:** No          **Fire:** No          **Number of Injuries:** 0     **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89609L...

**SUMMARY:**

PISTON RINGLAND FAILURE AFTER 10K MILES ON BRAND NEW 2009 SUBARU IMPREZA STI. ENTIRE
ENGINE BEING REPLACED BY SUBARU UNDER WARRANTY. *TR

              *                 *                 *

**Date Complaint Filed:** 07/22/2010                                           **Date of Incident:** 05/14/2010

**Component(s):** ENGINE                                                        **NHTSA ID Number:** 10344766

**Consumer Location:** FALLS CHURCH, VA

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZZA | 2010 |

**Details**                                                                    0 Available Documents

**Crash:** No          **Fire:** No          **Number of Injuries:** 0     **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR8H69AL...

**SUMMARY:**

BEFORE THE FAILURE WHITE SMOKE CAME OUT THE TAILPIPE AND THE ENGINE WAS HESITATING.
PISTON #4 HAD A FAILED RINGLAND CAUSING THE ENGINE TO FAIL. TO CORRECT THE FAILURE THE
ENGINE HAD TO BE TAKEN APART AT THE DEALER AND HAVE NEW PARTS INSTALLED. THE CAR WAS
OUT OF MY POSSESSION FOR TWO WEEKS. THE CAR HAD ONLY ~8000 MILES ON IT AND IT
APPEARS TO BE A VERY COMMON PROBLEM ON 2008-2010+ SUBARU IMPREZA STI'S. *TR

**Date Complaint Filed:** 07/25/2010                  **Date of Incident:** 02/22/2010

**Component(s):** ENGINE                                 **NHTSA ID Number:** 10345175

**Consumer Location:** WAPPINGER FALLS CHURCH, NY

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| SUBARU | IMPREZZA STI | 2008 |

**Details**                                              **0 Available Documents**

**Crash:** No           **Fire:** No        **Number of Injuries:** 0      **Number of Deaths:** 0

**Manufacturer:** Subaru of America, Inc.

**Vehicle Identification No. (VIN):** JF1GR89698L...

**SUMMARY:**

IN FEBRUARY 2010, I PURCHASED A 2008 SUBARU IMPREZA STI FROM A SUBARU DEALERSHIP WITH FACTORY WARRANTY AND I PURCHASED AN EXTENDED FACTORY WARRANTY. ONCE I BEGAN GETTING USED TO THE CAR I NOTICED THERE WAS AN ISSUE. WHEN I WOULD ACCELERATE THERE WOULD BE CONSTANT "DEAD SPOTS" IN THE POWER BAND THROUGH OUT THE RPM RANGE. AFTER MULTIPLE TIMES OF BRING THE CAR IN FOR REPAIR THE DEALERSHIP COULD NOT FIGURE OUT THE PROBLEM. BUT I BEING VERY CAR SOCIAL ON THE INTERNET I FOUND THAT MANY AND I MEAN MANY PEOPLE WERE HAVING THE SAME ISSUE WITH THE ACCELERATION OF THE VEHICLE AND SOME HAD COME TO FIND OUT THAT THERE MOTORS PISTONS "RINGLANDS" WERE CRACKED AND THE CYLINDER WAS LOSING COMPRESSION. AFTER MULTIPLE SERVICES AS EXPLAINED BEFORE SUBARU FINALLY FOUND THAT MY MOTOR ALSO HAD A "RINGLAND" FAILURE! THE DEALERSHIP REPLACED THE BOTTOM END OF THE MOTOR AND I RECEIVED MY CAR BACK. IT RAN GREAT I KNEW THAT'S HOW IT SHOULD HAVE FELT IN THE FIRST PLACE.BUT NOW AROUND 3000 MILES LATER THE SAME ISSUE IS BACK AGAIN! IT IS MY WORRY THAT I GO TO PULL OUT OF A SIDE ROAD EXPECTING THE CAR TO BE ABLE TO MAKE IT OUT, AND I GO, BUT THE CAR IS BOGGING DOWN AND IS STRUGGLING TO GET UP TO SPEED AND THE OTHER CAR HAS TO JAM ON THERE BREAKS OR THEY END OF REAR ENDING ME CAUSING AN EVEN BIGGER PROBLEM.THE SAME COULD BE SAID FOR EXIT ENTRANCES ONTO HIGHWAYS. AFTER RESEARCHING ON THE INTERNET I COME TO FIND OUT THAT THIS PROBLEM HAS BEEN PLAGUING SUBARU OWNERS FOR YEARS NOW AND SUBARU HAS DONE NOTHING TO FIX THIS ISSUE. AND THIS DOES NOT ONLY EFFECT SUBARU IMPREZA STI OWNERS ONLY BUT CAN ALSO BE FOUND IN THE MODELS SUCH AS THE WRX, OR OUTBACKS DE TO SIMILAR ENGINE DESIGNS. I BELIEVE SUBARU IS TURNING A BLIND EYE TO HOW MUCH OF AND ISSUE THIS IS AND HOW BIG AN ISSUE THIS COULD CAUSE. I READ THAT MOST CAR COMPANIES WHEN THEY HAVE A WIDESPREAD ISSUE AS EXPLAINED THEY COMPARE THE COST OF A RECALL TO COST OF PER CAR ISSUES AND THEY GO WITH THE CHEAPER BUT THIS IS A MAJOR PROBLEM NEEDS RESOLUTION. *TR

*       *       *

## Redesign of Class Engine Components and Management System

31.      EJ255 and EJ257 engines have been subject to constant upgrades in performance since their introduction without corresponding modifications to engines internal components to handle the more than considerable horsepower and torque increases, creating a more powerful engine output than the materials were originally meant to handle. As a consequence of using unmodified stock materials from the standard 2.5 liter base engine in WRX and WRX STi more powerful high output applications,

17

class engines cannot and do not tolerate these performance increases without predictable premature internal component failure at the engine piston ringlands.

32.     Predecessor EJ255 and 257 engines (and other Subaru engines including the 2.0 liter WRX and STi engines) also experienced premature piston ringland failures.  In an effort to solve this issue, which was well known to Subaru, without spending hundreds of millions of dollars to redesign and retool the engine, the defendants experimented with different PCV system configurations.  Other attempted modifications included changes to engine management system mapping in an attempt to reduce engine knock that increases forces acting on the piston and ringlands.  These attempted modifications demonstrate that there was a continuing problem with the EJ255 and 257 engines since their introduction in early 2000 that has yet to be fully resolved.

33.     Governmental regulations exacerbated class engine durability and performance issues with increasingly difficult-to-satisfy EPA passenger vehicle emission standards and fuel economy requirements.  In response, the defendants adjusted class engine management systems to run leaner air-fuel mixtures and modified other engine operation parameters that further strained the already overstressed internal engine components of the class vehicles including the piston ringland bearing surfaces.

34.     Prior to manufacturing and then distributing a new part, defendants perform substantial field inspections, testing and quality review of vehicles in service to determine the root cause and diagnosis of a problem.  Following this analysis, draft and final specifications are prepared and sent out to bid.  This protocol takes at least twelve months of lead-time under normal circumstances.  The defendants, therefore, knew or should have known no later than early 2008 that the engines in class vehicles were defective and would prematurely fail.

35.     For example, in SoA's New Jersey facility, a Product Safety Manager is assigned to various components including the defective components discussed in this complaint.  The Product Safety Manager's responsibilities include monitoring field information, NHTSA and DOT information

to "quickly identify and isolate potential Subaru 'safety' issues and assist in determining Product Safety Escalation and taking field action" on any issues identified. SoA also employs Field Service Engineers "to proactively monitor and investigate the product quality and effectiveness . . ." and assist retailers with difficult diagnosis and repairs, "lead[ing] root cause field investigations." In addition, SoA maintains a Quality Assurance Group in New Jersey which seeks to "summarize customer feedback from Customer Retailer Service (CRS) data, warranty claims" and engage in "data mining and extracting [of] information to identify trends for seasonality, location, type of defects and attributes and a Field Quality Assurance Data Specialist to support analyzing of claims, quality monitoring and creation of quality monitoring reports and field reports. All of these processes were intended to and, in fact, did, result in early notice to defendants of the Piston Ringland Defect.

**Other Sources of Defendants' Knowledge of Class Engine Defects**

36.    In addition to the above sources, the defendants also would have acquired knowledge no later than early 2008 that class engines were defective due to the Piston Ringland Defect through: (1) Monitoring of warranty claims where the original class engine was replaced under the new car warranty as authorized by SoA and verified by subsequent parts audits and computerized vehicle repair history; (2) Teardowns and inspections of defective class engines replaced under warranty to determine its failure mode (for reimbursement to the various defendant entities by the component part manufacturer) and analysis of whether to modify the existing engine materials, workmanship, manufacture, and/or design; (3) Sales and distribution of replacement engines to authorized Subaru vehicle dealerships and independent repair facilities; (4) Internet communications on Subaru vehicle enthusiast and owners' websites[13] and other consumer forums monitored by the defendants; (5)

---

[13] One such Internet site managed by and for Subaru WRX and STi enthusiasts is North American Subaru Impreza Owners Club. *See* forum entitled "How to Avoid Blown Ringlands in your Turbo Subaru." This forum has over 18,00 views (last checked February 12, 2018) and can accessed here: https://forums.nasioc.com/forums/showthread.php?t=2732312&highlight=ringlands. Another

Information concerning revisions made to subsequent engine specifications and materials; (6) Long term durability and performance testing conducted in actual operating environments in the United States; and, (7) Communications with class vehicles owners who experienced premature engine failure.

## TOLLING OF THE LIMITATIONS PERIOD

37.     The fraudulent conduct of the defendants tolls any applicable statutes of limitations since the fraudulent misrepresentations concerning the true cause of then Piston Ringland Defect failures in class vehicles was an inherently unknowable fact given the technical nature of the class vehicles materials, workmanship, manufacture, and/or design defects.

38.     Class vehicle owners do not possess the requisite technical skills in automotive engineering to discern the materials, workmanship, manufacture, and/or design defects in their vehicles or the requisite technical skills to surmise the proper vehicle maintenance, maintenance intervals and scheduled replacement of critical systems for class vehicles.

39.     The statutory and case law of California together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class vehicles because of the defendants' fraudulent conduct, including but not limited to concealment of class vehicles defects and omission of material facts.

40.     Proposed class members relied on the defendants' fraudulent misrepresentations concerning the cause of class engine failures and therefore delayed bringing suit against the defendants.  These misrepresentations relate to the fact that, in reality, class engines were failing due to materials, workmanship, manufacture, or design defects.  The defendants, however, fraudulently attributed the failings of class vehicles engines to other factors and/or exculpating conditions for which the defendants had no responsibility.

---

article at this site entitled "EJ255 / EJ257 Ringland Failure Article" (last checked February 12, 2018) is at "https://forums.nasioc.com/forums/showthread.php?t=2850139&highlight=ringlands.

41. The defendants are estopped from asserting that statutes of limitations were running for the duration of time class members relied on the defendants' fraudulent representations.

42. The defendants are equitably estopped from asserting the statutes of limitations have run against the claims of class members.

## FURTHER ALLEGATIONS

43. The defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representative and proposed class members the Piston Ringland Defect in class engines even though the defendants knew or should have known of design, materials and manufacturing defects in class vehicles due to defendants' testing of class engines.

44. The defendants had actual knowledge that the Piston Ringland Defect was causing extensive irreversible premature performance degradation in class engines shortly after production of class vehicles commenced. The defendants engaged in extensive field research and quality investigations and analysis before revising the specifications for the original defective engine prior to 2008, rebidding the new engine for production and manufacturing and distributing the new engine in or about 2008. In addition, defendants have been, and continue to be, under a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. The defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

45. The defendants failed to inform class vehicle owners and lessees prior to purchase or lease or during the express warranty period that their engine was defective as a result of the Piston Ringland Defect and would fail shortly after the express warranty period expired. The defendants misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of the Piston Ringland Defect in the class engine.

46.     The defendants also failed to inform class vehicles owners at the time of purchase that the engine in their class vehicles' engine had been inadequately tested prior to placing the car in production and the time of vehicle sale.

47.     The defendants also failed to inform class vehicle owners of the Piston Ringland Defect in engine materials, workmanship, manufacture, and/or design while the class vehicles were within the durational limitation of the express warranty period, including the powertrain limited warranty.[14] Specifically covered by this powertrain limited warranty were the engine, engine block and all internal engine components.  This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers from the date the vehicle was delivered to the first retail purchaser.

48.     The defendants knew or should have known in early 2008 (the date indicative of a design and/or manufacture change) that class engines were experiencing premature engine failures as a result of the Piston Ringland Defect.  Despite this knowledge, the defendants continued to sell class vehicles with an engine that was defective.  This knowledge is imputed to all defendants because SoA was monitoring warranty claims and class vehicles performance in the United States, and reporting back to its parent company located in Japan.

49.     The proposed class representative and proposed class members had valid and binding warranties and contracts with the defendants and were reasonably expected by the defendants to use their respective class vehicles in the manner in which passenger motor vehicles were used.

_____

[14] Class vehicles were accompanied by a basic warranty of "3 years or 36,000 miles, whichever comes first."  Class engines were covered by the Powertrain Limited Warranty that promised "any repairs needed to correct defects in "material or workmanship" for "5 years or 60,000 miles, whichever comes first" to the "engine block and all internal parts ...  These warranties are made by Subaru of America, Inc. ... "

50.     The proposed class representative and proposed class members complied with all warranty and contractual obligations including all warranty, breach of warranty notices, maintenance and product use obligations for their respective class vehicles.  The proposed class representative and proposed class members operated their class vehicles under normal anticipated conditions in non-commercial environments.

51.     The defendants timely received the proposed class representative' breach of warranties notice through authorized representative and suffered no resulting prejudice.  The proposed class representative contacted SoA directly and/or through an authorized dealership.

52.     The proposed class representative and proposed class members were informed by representatives of SoA that SoA would not provide assistance in replacing engines incorporated in class engines or reimbursing replacement costs because their vehicles were outside of the express warranty period.

53.     The defendants refused to fully reimburse or compensate the proposed class representative for vehicle engine repair expenses caused by the Piston Ringland Defect or provide a suitable substitute or replacement vehicle.  Although their respective vehicles' engine failures occurred outside the unilateral express warranty period (which was not bargained for prior to purchase), the proposed class representative's class vehicle exhibited unmistakable symptoms (known only by the defendants) of degradation and impending premature failure within the express warranty period as described in this complaint.

54.     Despite actual and constructive knowledge of the Piston Ringland Defect, the defendants failed to cure class vehicles defects within the express warranty period and thereby breached the terms of the express warranty.

55.     Through no fault of their own, the proposed class representative and proposed class members did not possess sufficient technical expertise to recognize symptoms of impending engine failure.  This information, however, was well known to the defendants, but not revealed.

56.     The proposed class representative relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of the defendants at the time of purchase, including but not limited to the useful and expected life of the engines incorporated in class engines and the recommended class vehicles maintenance program.

57.     The defendants' misrepresentations, omissions and fraudulent statements were received by the proposed class representative and proposed class members prior to and at the point of their class vehicles purchase.  These representations, omissions and fraudulent statements were made by Subaru vehicle dealers referencing publications concerning class vehicles including the Owner's Manual and Warranty & Maintenance Booklet materials.  The representations created a reasonable belief that the useful life expectancy of the engine in the class vehicles without a major failure was in excess of 120,000 miles.  These representations specifically related that the class engine's piston maintenance consisted of following instructions for recommended engine oil and change intervals.

58.     The defendants actively concealed the true reasonably expected duration of the class engine's pistons from the proposed class representative and all class vehicles purchasers.  The defendants intentionally failed to inform class vehicles purchasers that class vehicles incorporated the Piston Ringland Defect that would prematurely fail within the reasonably expected durational operating period.

59.     The defendants intentionally failed to inform class vehicles purchasers or lessees that the class engine incorporated in class vehicles results in higher operational costs than alternative conventional mechanical engine driven engines or other competitive technology because the class engine prematurely fails within the reasonably expected useful life of an engine as a result of the Piston Ringland Defect.

60.     The defendants actively and fraudulently concealed the existence of the engine defects (including defects covered under class vehicles warranties concerning materials and workmanship) and that the Owner's Manual and Warranty & Maintenance Booklet accompanying class vehicles

24

incorporated improper maintenance recommendations and maintenance intervals including the replacement of the engine.

61.     The proposed class representative and class members did not learn that their respective class vehicles engine was defective until after their engines failed.

62.     The defendants' customer service telephone representatives made false and fraudulent representations to class members as to the cause and existence of defects in class vehicles although the service representative received hundreds of consumer complaints that the engines in class vehicles prematurely failed as a result of the Piston Ringland Defect. The defendants' employees falsely represented that certain pretexts for which the defendants were not responsible as the basis for the failures that were in fact caused by an otherwise warranted material defect in the engines. They falsely stated that defendants were not responsible for the resulting class vehicles engine failures and/or denied the existence of the known class vehicles defects.

63.     Subaru vehicle authorized dealers (who also had a vested financial interest in concealing and suppressing the actual cause of class vehicles engine failures) improperly blamed premature engine failures on certain conditions for which the defendants would not be responsible and/or denied the existence of the Piston Ringland Defect in the engine.

64.     The defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that class vehicles were defective with respect to their engine, and that the engine suffered from extensive irreversible premature performance degradation during the warranty period caused by the Piston Ringland Defect and did not have a normal and/or reasonable useful life before sales of class vehicles commenced in the United States. This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including the proposed class representative and proposed class members. The proposed class representative and proposed class members were ignorant of this technical information through no fault of their own.

65.     The defendants acted to conceal the Piston Ringland Defect during the warranty period so that repair costs would be shifted to the proposed class representative and proposed class members once the warranty expired and the class engine failed.

66.     The defendants' knowledge of class vehicles' Piston Ringland Defect was derived from warranty claims, field inspections, quality assurance engineer analysis, customer complaints and monitoring of performance of class vehicles by SoA quality assurance employees.  Additionally, the number of replacement engines and subsequent engine revisions would have placed the defendants on notice of these engine defects.  The defendants elected to place into the stream of commerce class vehicles that they knew would be adversely affected by the failure to adequately design and manufacture the engine.

67.     Additional information supporting allegations of fraud and fraudulent conduct is in the control of the defendants.  This information includes but is not limited to technical root cause analyses, communications with class vehicles owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class engines' engine contained the Piston Ringland Defect.

Material information fraudulently concealed and/or actively suppressed by the defendants includes but is not limited to the Piston Ringland Defect defects described in the preceding paragraphs and throughout this complaint.

68.     Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including the proposed class representative and proposed class members) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance and durability.  In fact, class vehicles actually contained the known engine Piston Ringland Defect described in this complaint that would increase vehicle-operating costs by thousands of dollars.

69.    The defendants (and particularly the sales and marketing executives at SoA) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that class vehicles would last over 120,000 miles or ten years before experiencing engine failure.

70.    Material information was fraudulently concealed and/or actively suppressed in order to protect the defendants' (and authorized vehicle dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit Subaru brand disparagement.

71.    The defendants had a duty to disclose to class vehicles owners that there were materials and manufacture defects in class vehicle class engines.

72.    This duty arose because the defendants knew that the Piston Ringland Defect existed in the class vehicles and inaccuracies in the supplied owner's materials that affected vehicle operation, operating costs and safety while class vehicles owners were not, and could not reasonably be, cognizant of these defects and dangers.

73.    The defendants continuously and affirmatively concealed the actual characteristics of class vehicles from the proposed class representative and other purchasers.  The defendants breached their affirmative duty of disclosure to class vehicles owners (and particularly to owners who inquired as to the cause of class vehicles engine failures).[15]

74.    The defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed the existence of defects in class vehicles and omissions in accompanying Owner's Manual and Warranty & Maintenance Booklet materials.

---

[15] Since unexpected engine failure is a serious safety issue particularly on limited access highways, the defendants had an affirmative duty to disclose the vehicle defects together with associated risks.  Each of the named plaintiffs in this proceeding experienced dangerous circumstances when their respective class engine unexpectedly quit and the engine entered partial or full shutdown mode.

75.     California Civil Code § 1670.5 (which parallels U.C.C §2-302) entitled "Contract or clause unconscionable" states in relevant part:

> (a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

> (b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

76.     The warranties accompanying class vehicles were procedurally and substantively unconscionable under Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that class vehicles contained the Piston Ringland Defect, the inability of class vehicle purchasers or lessees to bargain with the defendants to increase durational warranties, lack of knowledge, lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to durational warranties that unfairly favored the defendants particularly where there were class vehicle defects known only to the defendants and the warranty unfairly shifted repair costs to consumers when class vehicles' engines prematurely fail during their reasonably expected life), absence of effective warranty competition and the fact that class vehicles fail with substantially fewer miles of operation than competitor vehicles from other manufacturers or other models manufactured by the defendants.

77.     Purchasers of class vehicles reasonably expect vehicles to function well in excess of the class vehicles' durational warranties before requiring extensive expensive repairs.  This is particularly true where the purchasers of class vehicles were led to believe by the defendants' representations and typical consumer expectations in a commercial context that the useful expected life of the vehicles was

in excess of 120,000 miles and there was no scheduled inspection, maintenance or maintenance for the engine within this period.

78.     Given the conduct of the defendants and the materials, workmanship, manufacture, and/or design defects in class vehicles (that the defendants knew were inherently defective prior to the time of sale), the durational limitations of the warranties are oppressive, unreasonable and unconscionable because the warranty disclaimers of the proposed class representative and proposed class members were neither knowing nor voluntary.

79.     The proposed class representative and proposed class members had an absence of any meaningful choice in the purchase of class vehicles and the contractual terms were unreasonably favorable to the defendants since the defendants were fully aware of the presence of the Piston Ringland Defect in the class vehicles that substantially increased class vehicles' operating costs.  The proposed class representative and proposed class members were unaware of the Piston Ringland Defect in the class vehicles at the time of purchase.

80.     The bargaining position of the defendants for the sale of class vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including the proposed class representative and proposed class members.  This is because the defendants knew there were defects in class vehicles affecting vehicle-operating costs.

81.     The defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that class vehicles were inherently defective and dangerous and had been inadequately tested.

82.     The defendants knew defects in class engine components would cause certain expensive repair failures within one-half of the useful expected life of the class vehicles' engine.  The defendants artificially limited the duration of the warranty period to avoid performing engine warranty repairs in order to maximize profits through the sale of defective vehicles.

83.     The defendants unconscionably sold defective class vehicles to the proposed class representative and proposed class members without informing these purchasers that the class vehicles were defective.  In the alternative, the defendants failed to notify the proposed class representative and proposed class members after the time of sale that the engine had been modified and that the engine in their respective vehicles should be replaced prior to the expiration of the warranty.

84.     The defendants' conduct renders the vehicle purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

85.     The durational limitation of the express warranties accompanying the class vehicles is unreasonable and unconscionable since the defendants actively concealed the Piston Ringland Defect and issued incorrect maintenance recommendations and maintenance intervals.  The proposed class representative and proposed class members had no notice of or ability to detect the defects.

86.     The defendants restricted the warranty provisions for class vehicles in an effort to avoid the cost of repairs because they were cognizant of the class vehicles' defects as described in this complaint that existed at the time of sale.

87.     Defendants were aware that engines in competitor vehicles manufactured and sold at the time the class vehicles were manufactured and sold, ordinarily last longer than warranted by the warranty accompanying class vehicles.

88.     The defendants engaged in unconscionable, fraudulent commercial practices and attempted to conceal class vehicles materials defects, workmanship defects, manufacturing defects and improperly recommended maintenance.

89.     The defendants are engaged in a continuing fraud concerning the true underlying cause of class vehicles' engine failures.

90.     The defendants failed to adequately test class vehicles in appropriate consumer environments prior to marketing, distribution and sale.

91.     The defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. The defendants' upper level management orchestrated this wrongful conduct.

92.     The proposed class representative and proposed class members operated and maintained their class vehicles in conformity with the respective Owner's Manual and Warranty & Maintenance Booklet and provided the requisite notice to the defendants' authorized agents for warranty repair after their class vehicles engines failed.

93.     Class vehicle owners sustained an ascertainable financial loss, including but not limited to increased maintenance costs for engine inspections and/or premature replacement of the engine. Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class vehicles' engines has become public information after the time of their purchase.

94.     The proposed class representative and proposed class members have not received the benefit of their bargain concerning their respective purchase of class vehicles.

95.     The defendants are persons within the context of the consumer protection laws of California together with other states and committed wrongful conduct described in this complaint including conduct that caused ascertainable financial harm and/or economic loss to the proposed class representative and proposed class members.

96.     The defendants created an over-all misleading impression through their failure to disclose material information concerning the fact that class vehicles incorporated defective engines as described in this complaint and were accompanied by an Owner's Manual and Warranty & Maintenance Booklet materials that incorporated incorrect engine service, maintenance and critical systems replacement recommendations.    The proposed class representative and proposed class members were deceived by the defendants' conduct as described in this complaint with respect to their purchase of class vehicles.

97. The defendants violated the consumer protection laws of California and other states with their oppressive and unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to the proposed class representative and proposed class members.

98. The defendants were under a duty to disclose safety defects in class vehicles as described in this complaint but failed to disclose to the proposed class representative and proposed class members the characteristics of class vehicles with respect to the Piston Ringland Defect in violation of the consumer protection laws of California and other states. The defendants' omissions (that engines were defective and that the Piston Ringland Defect constituted a safety risk) deceived purchasers (including but not limited to the proposed class representative and proposed class members). Those disclosure omissions include the fact that class vehicles engine Piston Ringland Defect had a significant impact on operating costs and vehicle safety. This failure to disclose additional information concerning class vehicles defects as described in this complaint, had the capacity to, and in fact did, deceive purchasers (including but not limited to the proposed class representative and proposed class members) in a material respect.

99. If the proposed class representative and proposed class members had been made aware of the Piston Ringland Defect as described in this complaint in their respective class vehicles and the attendant ramifications of value, durability, operating, and safety, they would not have purchased the class vehicles or would have paid less for their vehicles since class members were led to believe that they were purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of class vehicles.

100. The defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representative and proposed class members the Piston Ringland Defect in class vehicles even though the defendants knew or should have known information concerning the Piston

Ringland Defect was material and central to the marketing and sale of class vehicles to prospective purchasers, including the proposed class representative and proposed class members.

101. The defendants violated the consumer protection laws of California and other states by failing to inform class vehicles owners at the time of purchase that class vehicles had known defects, that the vehicles would prematurely require expensive engine replacement and/or that the class engine could experience unanticipated failure with attendant safety consequences.

102. As a direct result of these omissions, the proposed class representative and proposed class members purchased class vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented. These misrepresentations diminish the vehicle value and increase cost of vehicle ownership while also increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase.

103. The wrongful conduct of the defendants in violation of the consumer protection laws of California and other states occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by the defendants' conduct.

**What the Omissions Were:**

104. The defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning class vehicles, including information concerning class engine Piston Ringland Defect, in an effort to deceive purchasers as described in this complaint. At the time of purchase, the defendants fraudulently omitted to disclose material matter regarding the defects in class vehicles as described in this complaint, including their impact on future repairs, operating costs and vehicle reliability as described in this complaint.

105. The defendants fraudulently concealed, from the proposed representative and proposed class members, the defects in class vehicles even though the defendants knew or should have known that information concerning these defects was material and central to the marketing and sale of class

vehicles to prospective purchasers, including the proposed class representative and proposed class members.

106.    The defendants concealed from the proposed class representative and proposed class members during their respective warranty periods that a defect existed in the class engine as described in this complaint that could have and should have been fixed during the warranty period.  This is particularly true since these defects constituted a safety issue, and defendants' withholding of this material information deprived the proposed class representative and proposed class members of the right to have such defective part replaced for free under the warranty.

**The Person(s) Responsible for the Failure to Disclose:**

107.    The proposed class representative and proposed class members are entitled to the reasonable inference that the defendants' sales, marketing, engineering and warranty departments and their executives were involved in the omissions.

**The Context of the Omissions and the Manner in which they Misled:**

108.    Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including the proposed class representative and proposed class members) premised on affirmations and representations as described in this complaint.

109.    If the proposed class representative and proposed class members had been informed of the Piston Ringland Defect in their class vehicles, they would not have purchased or leased their respective class vehicles or would have paid substantially less.  If the proposed class representative and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the class vehicles since each class member believed they were purchasing or leasing vehicles without major defects and were not fully informed of true characteristics and attributes of class vehicles.  If the proposed class representative and proposed class members had been informed of the defect during the warranty period, they would

have had the defective part replaced under warranty. The defendants' conduct that violated the consumer fraud statutes alleged herein deprived the proposed class representative and proposed class members of that remedy.

**What the Defendants Obtained through the Fraud:**

110. Material information concerning class vehicles was concealed and/or actively suppressed in order to protect the defendants' corporate profits from loss of sales, vehicle purchase refunds and warranty repairs. This conduct also sought to prevent adverse publicity and limit brand disparagement. Purchasers believed they were obtaining vehicles having different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their class vehicles. The defendants had a uniform policy of not properly disclosing class vehicles defects in order to promote sales and increase profits as described in this complaint.

111. As a proximate and direct result of the defendants' unfair and deceptive business trade practices, the proposed class representative and proposed class members purchased class vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

**COUNT I**

**BREACH OF UNIFORM COMMERCIAL CODE § 2-313:**
**EXPRESS WARRANTY OF MERCHANTABILITY BY**
**DEFENDANTS RESULTING IN FINANCIAL HARM**

(On Behalf of the Nationwide class or,
Alternatively, the California State Subclasses)

112. Proposed class representative Thompson and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

113. Defendants are merchants with respect to passenger motor vehicles. Class vehicles are goods within the meaning of the Uniform Commercial Code as adopted by California.

114. Class vehicles were accompanied by a basic warranty of "3 years or 36,000 miles, whichever comes first." Class engines were covered by the Powertrain Limited Warranty that

promised "any repairs needed to correct defects in "material or workmanship" for "5 years or 60,000 miles, whichever comes first" to the "engine block and all internal parts." SoA issued these class vehicle warranties.

115.     Defendants expressly warranted to the general public, owners and lessees of class vehicles that class vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used. The proposed class representative and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

116.     Defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of these vehicles including superior design and manufacture, safety, durability, reliability, economy and performance. But, in fact, class vehicles engines contained defects in the engine that severely increased the cost of ownership and maintenance of class vehicles that was not contemplated by class vehicles owners at the time of purchase because defendants did not disclose the engine defects.

117.     Defendants represented that class vehicles were of a particular standard or quality, as described in this complaint, when they in fact were not. Class engines in class vehicles are failing far short of the expected useful life.

118.     Defendants received adequate notice of its breach of the express warranties and failed to cure the warranty breaches. The proposed class representative and class members reported to defendants the problems with and failings of the engine class engines in their vehicles and requested that defendants cure the warranty breach by repair and/or replacement of the defective engine. In the alternative, the proposed class representative, as indirect purchasers, were not required to issue notice of the warranty breach to defendants and the lack of notice of warranty breach did not result in any prejudice to defendants.

119.     The proposed class representative and proposed class members complied with maintenance recommendations for their respective class vehicles.

120.     Defendants failed to repair or replace the proposed class representative' and proposed class members' class engines that were defective in materials and workmanship during the express warranty period although these defects were known to defendants at that time.[16]

121.     Class vehicles owned by the proposed class representative and proposed class members also prematurely failed and/or experienced substantial performance diminution within their respective express warranty periods.

122.     The proposed class representative and proposed class members relied on the express warranties made by the defendants concerning class vehicles when selecting to purchase their class vehicles.  As a result, the proposed class representative and proposed class members sustained injury, damages and an ascertainable loss in the purchase price of their vehicles and other financial injury including the cost for premature class engine repairs that resulted from defendants' warranty breach.

123.     Class vehicles are not reliable because of the engine defect and owners of these vehicles have lost confidence in the ability of class vehicles to perform the function of safe reliable transportation.

124.     The proposed class representative and proposed class members could not have reasonably discovered the defective condition of their class vehicles engine's defective condition prior to failure.

125.     The express warranty remedy set out in the warranty provisions for class vehicles fails of its essential purpose under Uniform Commercial Code § 2-719(2) and the limitation of consequential damages is unconscionable under § 2-719(3) because of the conduct of defendants described in this complaint.

126.     Defendants breached the express warranties in that class vehicles were defective with respect to engine materials, workmanship, and manufacture.

127.     Defendants further breached the express warranties in that class vehicles were accompanied by an Owner's Manual and Warranty & Maintenance Booklet materials that incorporated no inspection and service intervals for the engine although defendants knew these components were defective and required periodic inspection, service and/or replacement.

---

[16] The Warranty & Maintenance Booklet materials for class vehicles recites that "warranty repairs ... will be performed by any Authorized SUBARU Dealer anywhere in the United States."

128.     Defendants further breached the express warranties by failing to remedy the defective engine caused by defects in materials and workmanship as required by the warranty that accompanied the respective class vehicles.  Class vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, design and manufacture defects which cause the engine not to perform as warranted.

129.     The proposed class representative and proposed class members relied on express warranties made by defendants concerning the class vehicles and sustained financial injury resulting from the breach of those warranties by defendants.

130.     Defendants' express warranty is a "repair and replace" warranty for future performance, as it promises to provide any repairs necessary to correct defects in materials or workmanship of the vehicle's internal parts at no charge to the owner or lessee.

131.     Under California Commercial Code § 2725, where a warranty extends to future performance, as the warranties here do, the claim accrues "when breach is or should have been discovered."

132.     The date of discovery of Thompson is the date upon which his respective defective engine failed and required replacement was no earlier than March 19, 2015.

133.     By virtue of defendants' breach of express warranty, the proposed class representative Thompson and proposed class members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

<u>COUNT II</u>

**BREACH OF IMPLIED WARRANTY PURSUANT TO
SONG-BEVERLY CONSUMER WARRANTY ACT,
(CALIFORNIA CIVIL CODE §§ 1792 AND 1791.1, *ET SEQ.*)**

(On Behalf of the California State Subclass)

134.     Proposed California class representative Thompson and proposed California class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

135.     Proposed California class representative Thompson and proposed California class members, are "buyers" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

136.     Defendants are "manufacturer[s]" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(j).

137.     Class vehicles are "consumer goods" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

138.     Defendants' warranty is an "express warrant[y]" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791.2.

139.     At all relevant times, defendants manufactured, distributed, warranted, and/or sold the class vehicles.  Defendants knew or had reason to know of the specific use for which the class vehicles were purchased or leased.

140.     Defendants provided an implied warranty to proposed California class representative Thompson and proposed California class members, which warranted that the class vehicles, including the components parts, are merchantable and fit for the ordinary purposes for which they were sold. Class engines in the class vehicles suffer from an inherent defect at the time of sale and, thereafter, are not fit for their ordinary purpose of providing reasonably safe and reliable transportation.

141.     Defendants impliedly warranted that the class vehicles are of merchantable quality and fit for such use. The implied warranty includes, among other things: (i) a warranty that the class vehicles manufactured, supplied, distributed, and/or sold by defendants are safe and reliable for providing transportation; and (ii) a warranty that the class vehicles are fit for their intended.

142.     Contrary to the applicable implied warranties, the class vehicles, at the time of sale and thereafter, were not, fit for their ordinary and intended purpose of providing proposed California class representative Thompson and proposed California class members, with reliable, durable, and safe transportation.  Instead, the engines in class vehicles are defective and suffer from failures that compromise the reliability, durability, and safety of class vehicles.

143.     As a result of the defendants' breach of the implied warranties, owners and/or lessees of class vehicles suffered an ascertainable loss of money, property, and/or value of their class vehicles. Additionally, as a result of the engine defect, proposed California class representative Thompson and proposed California class members were harmed and suffered actual damages in that the class vehicles' class engines are substantially certain to fail or have failed before their expected useful life has run.  The engine failures create a significant risk of accidents, injuries, and even death.

144. Defendants' acts described in this complaint breached the implied warranty that class vehicles were of merchantable quality and fit for such use, in violation of California Civil Code §§ 1792 and 1791.1, *et seq*.

145. Proposed California class representative Thompson and proposed California class members, seek full compensatory damages allowable by law, attorneys' fees, costs, the repair or replacement of all class vehicles the refund of money paid to own or lease all class vehicles, and any other relief to which Thompson and the California subclass may be entitled.

146. By virtue thereof, the proposed class representative and proposed class members demand judgment against defendants including multiple damages, interest, costs and attorneys' fees.

**COUNT III**

**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2310(d)(1(A)**

(Brought Under State Law on Behalf of the Nationwide Class or,
Alternatively, the California State Subclasses)

147. Proposed class representative Thompson and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

148. This count is brought as a state law claim under 15 U.S.C. §2310(d)(1)(A) and is before this Court as a supplemental state court claim for each of the state subclasses pursuant to diversity jurisdiction under CAFA.

149. The proposed class representative and proposed class members are consumers within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

150. Class vehicles are consumer products within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

151. Defendants are suppliers and/or warrantors within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

152. Defendants' express warranties are written warranties within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). Class vehicles implied warranties created by operation of state law are incorporated into the Magnuson-Moss Warranty Act as modified by § 2308.

153. Defendants breached the express and implied warranties accompanying class vehicles as described in this complaint.

154.     The Magnuson-Moss Warranty Act provides a claim for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

155.     Defendants' breach of the express and implied warranties was the direct and proximate cause of the proposed class representative's and proposed class members' financial harm as more fully set out in the preceding warranty counts and constitutes a violation of the Magnuson-Moss Warranty Act.

156.     Defendants are warrantors of class vehicles.

157.     Affording defendants a reasonable opportunity to cure their breach of written warranties for class vehicles defects would be unnecessary and futile.   The proposed class representative and proposed class members have already attempted to secure warranty coverage for their engine replacement and related repairs without success.

158.     At the time of sale or lease of each class vehicles, defendants knew, should have known and/or was reckless in not knowing of the misrepresentations and material omissions concerning the class vehicles' inability to perform as warranted but nonetheless failed to rectify the situation and/or disclose the defects as described in this complaint.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that class vehicles resort to an informal dispute resolution procedure and/or afford defendants a reasonable opportunity to cure the breach of warranties is excused and thereby deemed satisfied.

159.     The proposed class representative and proposed class members would suffer economic hardship if they returned their class vehicles but did not receive the return of all payments made by them.

160.     By virtue thereof, the proposed class representative and proposed class members demand judgment against defendants including multiple monetary damages, interest, costs and attorney's fees.

## COUNT IV

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,**
**CAL. BUS. AND PROFESSIONS CODE §§ 17200 *ET SEQ.***

(On Behalf of the California Subclass)

161.    Proposed class representative Thompson and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

162.    Proposed California class representative Thompson asserts this count on behalf of himself and members of the proposed California subclass.

163.    California's Unfair Competition Law ("UCL") prohibits all unlawful, unfair or deceptive business practices.  Defendants' conduct as described in this complaint constitutes unlawful, unfair and deceptive business practices.

164.    Defendants' breach of the express and implied warranties as described in this complaint violates § 2313 of California's Commercial Code and Cal. Civ. Code §§ 1792 *et seq*. of the Song-Beverly Consumer Warranty Act.  Defendants' conduct as described in this complaint further violates the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq*.  These violations are independent and unlawful unfair and deceptive business practices.

165.    Defendants' sale of class vehicles without disclosing the existence of defective class engines while misrepresenting the supposed quality and reliability attributes of these vehicles is an unlawful, unfair and deceptive business practice within the context of the UCL.  This conduct was unlawful, unfair and deceptive because it was intended to, and did in fact, mislead and deceive proposed California subclass representative Thompson and proposed California class members.  If defendants disclosed to proposed California class representative Thompson and to proposed California class members that class vehicles incorporated a defective engine or that the engine had been inadequately tested, they would not have purchased their respective vehicles or paid less for their respective class vehicles.

166.    Defendants knew that if defects in the engine or inadequate testing of the engine were disclosed to the consumer public prior to purchase, consumers at large would react similarly and elect to not to purchase class vehicles.  As a result, defendants intentionally concealed their knowledge of the engine defects and inadequate testing.

167.     As a direct, proximate and foreseeable result of defendants' unlawful, unfair and deceptive business practices, proposed California class representative Thompson and proposed California class members sustained an ascertainable loss and actual damages in that they expended tens of thousands of dollars to purchase defective class vehicles and then were required to spend additional sums to have their defective class engines repaired or replaced.  Moreover, because of the undisclosed defects, proposed California class representative Thompson and the proposed California class members sustained a loss and/or diminution in the value of their vehicles.  Proposed California class representative Thompson and proposed California class members, have or will incur incidental damages attributable to the loss of use of their class vehicles while the vehicles were or will be repaired.

168.     Defendants' unlawful, unfair and/or deceptive business practices caused proposed California class representative Thompson and members of the proposed California subclass to convey money and benefits to defendants including but not limited to the purchase price or lease payments for their vehicles together with engine repair or replacement costs.

169.     Proposed California class representative Thompson and the proposed California class members request an order of restitution forcing defendants to restore to them the benefits and monies they conveyed in connection with their purchase of their class vehicles and repair costs related to the defective engine.

170.     By virtue thereof, California class representative Thompson and the proposed California class members, demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

## COUNT V

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750 *ET SEQ.*[17]

#### (On Behalf of the California Subclass)

171.   Proposed California class representative Thompson and proposed California class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

172.   Proposed California class representative Thompson asserts this count on behalf of himself and members of the proposed California class.

173.   Defendants violated Cal. Civ. Code § 1770(a)(5) by representing that class vehicles have characteristics, uses, benefits and/or quantities they do not possess.

174.   Defendants violated Cal. Civ. Code § 1770(a)(7) by representing that class vehicles are of a particular standard, quality or grade, when they are not, and in particular, by supplying vehicles that contain a defect that involves an unreasonable safety issue.

175.   Defendants violated Cal. Civ. Code § 1770(a)(9) by advertising class vehicles with the intent not to sell them as advertised.

176.   Defendants violated Cal. Civ. Code § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it was not.

177.   Defendants conducted the above-described acts or practices in transactions intended to result, or that did result, in the sale of class vehicles to customers for personal, family or household use.

178.   Plaintiff Thompson and the proposed California class members, relied on defendants' affirmative representations that no maintenance would be required for the subject class engines for a duration of at least 120,000 miles and upon defendants' material omissions as to the defect, in that if the proposed class representative and proposed class members had been informed of class engine defects, they would not have purchased their respective class vehicles or would have paid substantially

---

[17] Plaintiff Thompson sent correspondence on February 14, 2018, by FedEx overnight delivery that provided the defendant with notice of their specific violations of the CLRA pursuant to Cal. Civil Code § 1782(a).  The defendants failed to provide an appropriate response or relief for their violations of the CLRA within thirty (30) days of such notice as required by the statute.

less.  Moreover, if the proposed class representative and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased the class vehicles since each class member believed they were purchasing vehicles without major defects and were not fully informed of true characteristics and attributes of class vehicles.  If the proposed class representative and proposed class members had been informed of the defect during the warranty period, they would have had the defective part replaced under warranty.

179.    As a result of defendants' conduct, proposed class representative, Thompson and the proposed California class members were harmed and suffered actual damages and compensatory damages in that the class vehicles experienced failure and required replacement and repair at the expense of plaintiffs and proposed class members and may continue to experience the aforementioned engine failures as a result of the defect.  As a direct and proximate result of defendants' unfair or deceptive acts or practices, plaintiff Thompson and the proposed California class members, suffered and will continue to suffer actual damages.

180.    The time that the CLRA claims commenced to run for the proposed class representative and the proposed California class members, were no earlier than the date of discovery by plaintiff Thompson of the failure of his class engine as a result of the concealed defect and that the defective class engine required replacement which was no earlier than March 19 2015.  In addition, due to defendants' knowing concealment described in this complaint, and the material omissions of defendants, which defendants was under a duty to disclose since the engine defect created a safety risk, plaintiffs could not have discovered the alleged defect earlier despite reasonable diligence.

181.    By virtue thereof, proposed California class representative Thompson and proposed California class members request judgment against the defendants, monetary damages and injunctive relief set out in this complaint, together with costs and attorneys' fees.

182.    The defendants violated the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq*. and committed other unfair and deceptive business practices as described in this complaint. Proposed California class representative Thompson and proposed California class members request equitable and injunctive relief authorized by the Consumers Legal Remedies Act and for such additional relief as necessary.

## COUNT V

### INJUNCTIVE AND DECLARATORY RELIEF

183.    The proposed class representative and proposed class members hereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

184.    There is a justiciable dispute as to whether the engine incorporated in class engines should be covered under the warranty accompanying class vehicles.

185.    The proposed class representative and proposed class members request a declaratory judgment declaring that going forward all remedial work necessary to correct the defective engine incorporated in class engines together with all resulting damages are covered under the class vehicles' warranty.

186.    This remedy is requested for all class members who still possess their vehicles.  This remedy is authorized under the consumer fraud statutes of California, Florida and Illinois and other states that grant each respective proposed class representative and proposed class member the right to seek injunctive or declaratory relief for violations of their respective state's consumer fraud statutes.

### RELIEF DEMANDED

WHEREFORE, proposed class representative Thompson and proposed class members request:

A.    An Order pursuant to Fed. R. Civ. P. 23(c) certifying the class and/or subclasses as defined in ¶ 21 with such modifications, if any, to the proposed certification as required by the Court for the efficient and equitable administration of justice in this proceeding;

B.    An Order appointing the proposed class representative as representative of the proposed class and designating the law firms of Thomas P. Sobran P.C. and Kantrowitz, Goldhamer & Graifman, P.C. as counsel for the proposed class pursuant to Fed. R. Civ. P. 23(g);

C.    Judgment for the proposed class representative and proposed class members against the defendants on all issues and counts;

D.    Damages for the proposed class representative and proposed class members, including but not limited to damages, together with interest, prejudgment interest, costs and attorneys' fees;

E.    Restitution for all engine repairs incurred by the proposed class representative and proposed class members resulting from the defectively designed and manufactured engines and incorrect maintenance and service intervals as set forth in the class vehicles' owner's manuals;

E.    Restitution of incidental expenses incurred by the proposed class representative and proposed class members, including but not limited to rental vehicles and other substitute transportation;

F.    A Court issued declaratory judgment declaring that all class vehicles claims caused by their defective engines are within the scope of the class vehicles' warranty coverage; and,

G.    Any other relief deemed necessary by the Court.

## REQUEST FOR JURY TRIAL

The proposed class representative and proposed class members request trial by jury on all issues and counts.

**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**

*s/ Gary S. Graifman*

By: Gary S. Graifman
Jay I. Brody
210 Summit Avenue
Montvale, New Jersey 07645
Tel:     (201) 391-7000
Fax:     (201) 307-1086
Email: ggraifman@kgglaw.com
        jbrody@kgglaw.com

**THOMAS P. SOBRAN, P.C.**
Thomas P. Sobran
7 Evergreen Lane
Hingham, MA 02043
Tel:     (781) 741-6075
Fax:     (781) 741-6074
Email: tsobran@sobranlaw.com
(to be admitted *pro hoc vice*)

*Counsel for Plaintiff*

Dated: March 16, 2018