Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
Sadé Calin (ID No. 231602017)
calins@ballardspahr.com
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
856.761.3400
856.761.1020 fax

Attorneys for Defendants Subaru of America, Inc.
and Subaru Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Christopher Thompson**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Subaru of America, Inc. and Subaru Corporation,**<br><br>Defendants. | CIVIL ACTION NO. 1:18-CV-03736-NLH-JS<br><br>**Defendants Subaru of America, Inc. and Subaru Corporation's Brief in Support of Their Motion to Dismiss (Fed. R. Civ. P. 12(B)(1), (6))** |

DMEAST #34611426 v3

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................... 2

    A.    Plaintiff's Allegations.................................................................... 2

    B.    The Warranties for Plaintiff's Subaru WRX STi ............................... 3

    C.    The Alleged Design Defect ............................................................ 5

    D.    The Claims and Relief Sought ........................................................ 5

        1.    Proposed Nationwide Class ..................................................... 5

        2.    The Proposed California Subclass ............................................ 6

III.  ARGUMENT............................................................................................ 6

    A.    Plaintiff's breach of express warranty claim must be dismissed. ........ 6

        1.    The express warranty on Mr. Thompson's vehicle
            expired prior to the alleged engine failure. ................................ 6

        2.    Mr. Thompson fails to plead adequately that the duration
            of the Powertrain Limited Warranty is unconscionable. ........... 8

        3.    The Powertrain Limited Warranty does not cover the
            alleged design defect............................................................... 12

        4.    Defendant SBR made no express warranties to Mr.
            Thompson; the breach of warranty claims against SBR
            must be dismissed. ................................................................. 17

    B.    Plaintiff's breach of implied warranty of merchantability claim
        under the Song-Beverly Consumer Warranty Act fails for
        several reasons....................................................................... 17

        1.    Plaintiff lacks standing to bring an implied warranty
            claim under the Song-Beverly Act.......................................... 18

        2.    Plaintiff's implied warranty of merchantability expired,
            at the latest, at the same time as his express warranty............ 19

C.    Plaintiff's Magnuson-Moss Warranty Act claim fails for the same reasons as his express and implied warranty claims.................. 20

D.    Plaintiff's statutory consumer fraud claims fail for several reasons. ....................................................................................... 22

    1.    Plaintiff fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b). ................... 22

    2.    Plaintiff's fraud claims are an impermissible attempt to lengthen his expired Powertrain Limited Warranty................. 29

    3.    Plaintiff pleads no unfair practice under the UCL because his vehicle's engine functioned properly through the duration of the Powertrain Limited Warranty........................... 30

    4.    Plaintiff's California Unfair Competition Law claim must be dismissed to the extent he seeks monetary damages and because he is not entitled to restitution from Defendants. ............................................................................ 32

E.    Plaintiff's Complaint fails to plead which claims are asserted against which defendant. .................................................................... 32

F.    Plaintiff is not entitled to injunctive or declaratory relief.................. 34

G.    Plaintiff Thompson lacks standing to pursue claims for vehicles he never owned or leased. .............................................................. 35

IV.    CONCLUSION........................................................................................ 38

DMEAST #34611426 v3

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alban v. BMW of N. Am.*,
 No. 09-cv-5398, 2011 WL 900114 (D.N.J. Mar. 15, 2011).......................*passim*

*Arlandson v. Hartz Mountain Corp.*,
 792 F. Supp. 2d 691 (D.N.J. 2011)....................................................................7

*Bartol v. Barrowclough*,
 251 F. Supp. 3d 855 (E.D. Pa. 2017)................................................................33

*Beshwate v. BMW of N. Am., LLC*,
 No. 1:17-cv-00417-SAB, 2017 WL 4410169 (E.D. Cal. Oct. 4,
 2017) .................................................................................................................24

*BK Trucking Co. v. Paccar, Inc.*,
 No. 15-cv-2282, 2016 WL 3566723 (D.N.J. June 30, 2016) ..............................8

*Bruce Martin Constr. v. CTB, Inc.*,
 735 F.3d 750 (8th Cir. 2013) ...........................................................................13

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997) .............................................................................4

*In re Caterpillar, Inc.*, *C13 & C15 Engine Prod. Liab. Litig.*,
 No. 1:14-cv-3722, 2015 WL 4591236 (D.N.J. July 29, 2015).................9, 10, 12

*Clemens v. DaimlerChrysler Corp.*,
 534 F.3d 1017 (9th Cir. 2008) ......................................................................7, 31

*Coba v. Ford Motor Co.*,
 2016 U.S. Dist. LEXIS 136283 (D.N.J. Sep. 30, 2016)...............................15, 16

*Cole v. NIBCO, Inc.*,
 No. 3:13-CV-07871 FLW, 2015 WL 2414740 (D.N.J. May 20,
 2015) .................................................................................................................34

*Cooper v. Samsung Elecs. Am., Inc.*,
 374 F. App'x 250 (3d Cir. 2010) ......................................................................21

iii

*David v. Volkswagen Grp. of Am., Inc.*,
2018 U.S. Dist. LEXIS 70284 (D.N.J. Apr. 26, 2018)........................................35

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ...........................................................................34

*Dewey v. Volkswagen AG*,
558 F. Supp. 2d 505 (D.N.J. 2008).....................................................................7

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
66 F.3d 604 (3d Cir. 1995) .................................................................................7

*F.D.I.C. v. OneBeacon Midwest Ins. Co.*,
883 F. Supp. 2d 754 (N.D. Ill. 2012)................................................................34

*Fisher v. Honda N. Am., Inc.*,
2014 WL 2808188 (C.D. Cal. 2014) .................................................................28

*In re Franklin Mut. Funds Fee Litig.*,
388 F. Supp. 2d 451 (D.N.J. 2005)....................................................................35

*Gotthelf v. Toyota Motor Sales, U.S.A.*,
525 F. App'x 94 (3d Cir. 2013) ...................................................................27, 28

*Granillo v. FCA US Ltd. Liab. Co.*,
No. 16-cv-153-FLW-DEA, 2016 WL 9405772 (D.N.J. Aug. 29,
2016) ..............................................................................................................22, 28

*Green v. Green Mt. Coffee Roasters, Inc.*,
279 F.R.D. 275 (D.N.J. Dec. 20, 2011) ............................................................36

*Hindsman v. General Motors LLC*,
No. 17-cv-05337-JSC (N.D. Cal. June 1, 2018)...................................13, 14, 16

*Hughes v. Panasonic Consumer Elecs. Co.*,
No. 10-846, 2011 WL 2976839 (D.N.J. July 21, 2011) ...................................15

*Jarrett v. Panasonic Corp. N. Am.*,
8 F. Supp. 3d 1074 (E.D. Ark. 2013).................................................................10

*Johansson v. Cent. Garden & Pet Co.*,
804 F. Supp. 2d 257 (D.N.J. 2011)....................................................................21

iv

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ....................................................................22, 24

*Knopke v. Ford Motor Co.*,
  14-cv-2225, 2014 WL 5817326 (D. Kan. Nov. 10, 2014) ..........................10, 11

*Koronthaly v. L'Oreal USA, Inc.*,
  2008 U.S. Dist. LEXIS 59024 (D.N.J. July 25, 2008) .......................................35

*Kounelis v. Sherrer*,
  2005 U.S. Dist. LEXIS 20070 (D.N.J. Sept. 5, 2005).......................................33

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. Sept. 21, 2011)....................................................36

*Mack Trucks Inc. v. BorgWarner Turbo Systems, Inc.*,
  508 F. App'x 180 (3d Cir. 2012) .......................................................................13

*McCabe v. Daimler AG*,
  948 F. Supp. 2d 1347 (N.D. Ga. 2013)..............................................................26

*McGarvey v. Penske Auto. Grp.*,
  No. 08-cv-5610-JBS-AMD, 2010 WL 1379967 (D.N.J. Mar. 29,
  2010) ..................................................................................................................21

*McVicar v. Goodman Glob., Inc.*,
  1 F. Supp. 3d 1044 (C.D. Cal. 2014) .................................................................25

*Merkin v. Honda N. Am., Inc.*,
  No. 17-cv-03625, 2017 WL 5309623 (D.N.J. Nov. 13, 2017).......................7, 10

*Nelson v. Nissan N.A., Inc.*,
  894 F. Supp. 2d 558 (D.N.J. 2012)...........................................................9, 12, 15

*Nelson v. Nissan N. Am., Inc.*,
  2014 U.S. Dist. LEXIS 175224 (D.N.J. Dec. 19, 2014).........................13, 14, 15

*Pastor-Richard v. Goodman Glob., Inc.*,
  No. 2012-cv-268, 2013 U.S. Dist. LEXIS 191759 (E.D. Ky. July 2,
  2013) ............................................................................................................10, 23

*Ramziddin v. Monmouth Cty. Sheriff Dep't*,
  2010 U.S. Dist. LEXIS 42798 (D.N.J. Apr. 30, 2010)......................................32

v

DMEAST #34611426 v3

*Robinson v. Kia Motors Am. Inc.*,
   2015 U.S. Dist. LEXIS 121755 (D.N.J. Sep. 11, 2015) .....................................13

*Rosen v. Uber Tech., Inc.*,
   164 F. Supp. 3d 1165 (N.D. Cal. 2016) ..............................................................32

*Semeran v. Blackberry Corp.*,
   2016 U.S. Dist. LEXIS 11864 (D.N.J. Feb. 1, 2016) .........................................36

*Shonk v. Fountain Power Boats*,
   338 F. App'x 282 (4th Cir. 2009) .......................................................................33

*Smith v. Ford Motor Co.*,
   462 F. App'x 660 (9th Cir. 2011) .........................................................................9

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
   2004 U.S. Dist. LEXIS 27086 (S.D.N.Y. June 23, 2004) ...................................3

*Temple v. Fleetwood Enters.*,
   133 F. App'x. 254 (6th Cir. 2005) ......................................................................21

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..............................................................19

*Troup v. Toyota Motor Corp.*,
   545 F. App'x 668 (9th Cir. 2013) .......................................................................13

*Victorino v. FCA US LLC*,
   No. 16-cv-1617-GPC(JLB), 2018 U.S. Dist. LEXIS 92284 (S.D.
   Cal. June 1, 2018) .............................................................................................18

*Weiland v. Palm Beach Cty. Sheriff's Office*,
   792 F.3d 1313 (11th Cir. 2015) .........................................................................34

**State Cases**

*Cohan v. Pella Corp.*,
   No. 2:14-MN-00001-DCN, 2015 WL 6465639 (D.S.C. Oct. 26,
   2015) ..................................................................................................................34

*D.R. Horton Inc. v. Dynastar Dev., L.L.C.*,
   No. MER-L-1808-00, 2005 WL 1939778 (N.J. Super. Ct. Law
   Div. Aug. 10, 2005) ...........................................................................................17

vi

*Dagher v. Ford Motor Co.*,
  190 Cal. Rptr. 3d 261 (Ct. App. 2015) ........................................................18, 19

*Daugherty v. Am. Honda Motor Co.*,
  51 Cal. Rptr. 3d 118 (Cal. Ct. App. 2006)..................................................*passim*

*Inline, Inc. v. Apace Moving Sys.*,
  125 Cal. App. 4th 895 (Ct. App. 2005) .............................................................32

*Leber v. DKD of Davis, Inc.*,
  187 Cal. Rptr. 3d 731 (Ct. App. 2015) .............................................................18

*Rubenstein v. The Gap, Inc.*,
  222 Cal. Rptr. 3d 397 (Ct. App. 2017), *review denied* (Nov. 29,
  2017) ................................................................................................................31

**Federal Statutes**

Magnuson-Moss Warranty Act,15 U.S.C. §§ 2301, *et seq.*...........................5, 20, 21

**State Statutes**

Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791.1, *et
  seq.* ...................................................................................6, 18, 19, 20, 17

California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750,
  *et seq.* ..............................................................................6, 21, 22, 24, 25, 30

California's Unfair Competition Law,Cal. Bus. & Prof. Code § 17200
  *et seq.* ...................................................................................................6, , 22, 32

**Rules**

Fed. R. Civ. P. 11(b) .........................................................................................10

Fed. R. Civ. P. 9(b) ......................................................................................22, 27

Fed. R. Civ. P. 8 .................................................................... 10, 16, 22, 27, 33, 34

Fed. R. Civ. P. 10(b) .........................................................................................33

Fed. R. Civ. P. 12(b)(1).......................................................................................35

DMEAST #34611426 v3

## Regulations

49 C.F.R. §§ 579.1–.21 .......................................................................................27

DMEAST #34611426 v3

## I.       INTRODUCTION

Plaintiff Christopher Thompson owns a second-hand 2009 Subaru Impreza WRX STi. He brings this putative class action against Defendants Subaru of America, Inc. ("SOA") and Subaru Corporation ("SBR") (collectively, "Subaru") alleging that his vehicle was sold with a design defect that ultimately caused the failure of his vehicle's engine. Plaintiff brings various breach of warranty and statutory fraud claims against Subaru.

Mr. Thompson, as the sole named plaintiff, seeks to represent a nationwide class of all persons who purchased or leased model-year 2009–2014 Subaru Impreza WRX or WRX STi vehicles ("Class Vehicles"). In the alternative, he seeks to represent a California class comprising all persons in California who purchased or leased a Class Vehicle.

Plaintiff's claims fail for many reasons. Chief among the obstacles facing Mr. Thompson's complaint is that his vehicle's engine performed as promised throughout the entire duration of the applicable written express warranty. When the original owner purchased Mr. Thompson's vehicle, SOA gave a written Powertrain Limited Warranty and promised to repair any problems in materials or workmanship concerning the vehicle's engine for five years or 60,000 miles. Mr. Thompson's breach of warranty claims fail as a matter of law because he affirmatively pleads that his vehicle's engine performed as promised. Indeed, the

single repair underlying Plaintiff's claim occurred more than one year and nearly 9,000 miles after the engine warranty expired.

Mr. Thompson tries to evade that bar to recovery by claiming the terms of the Powertrain Limited Warranty were somehow unconscionable. But Plaintiff alleges nothing in support of that bald allegation, and courts—including this District—have repeatedly rejected such allegations. Likewise, Plaintiff's other attempt to impermissibly extend the warranty by relying on statutory fraud claims has been soundly rejected.

Finally, even if Plaintiff could ignore the expiration of his warranties, his claim fails for the simple reason that those warranties do not cover the design defects alleged in this case. The warranties are expressly limited to defects in material or workmanship, and Plaintiff alleges no such defects.

For those reasons and others more fully developed below, SOA and SBR request that Plaintiff's complaint be dismissed in its entirety for failure to state a claim for which relief can be granted.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Plaintiff's Allegations

Mr. Thompson purchased his model-year 2009 Subaru Impreza WRX STi second-hand from a California Subaru dealer in 2011. Compl. ¶ 14. The original owner purchased the vehicle on July 29, 2009, in Saint George, Utah. Mr.

DMEAST #34611426 v3

Thompson alleges that his engine failed on March 19, 2015, and required replacement in April 2015, when his vehicle had been driven 68,995 miles. Compl. ¶¶ 14, 132, 180. He admits that his engine failure occurred outside the Powertrain Limited Warranty period. Compl. ¶ 53. The repairs to his vehicle were not covered under that warranty because it had expired one year and 8,995 miles before the alleged failure. Compl. ¶ 52. However, Plaintiff received a contribution from a third-party limited lifetime powertrain protection policy he had separately purchased. Compl. ¶ 14.

### B.    The Warranties for Plaintiff's Subaru WRX STi

Defendant SBR "is a corporation organized under the laws of Japan, having its principal place of business in Tokyo, Japan. It is a global transport equipment manufacturer engaged in the development and manufacture of Subaru vehicles, parts, and accessories." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 2004 U.S. Dist. LEXIS 27086, at *5 (S.D.N.Y. June 23, 2004). It does not sell or market vehicles to consumers in the United States. Instead, it relies on its distributor, SOA, to import, distribute, and market Subaru brand vehicles, parts, and accessories. *Id.* As such, SOA is the warrantor of such vehicles.

SOA provides several express written warranties to purchasers of Subaru vehicles that "cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur

3

under normal use." Walters Decl. Ex. A, at 4 (2009 Warranty & Maintenance Booklet).[1]

Among them are (1) the New Vehicle Limited Warranty, which covers the entire vehicle for 3 years or 36,000 miles, whichever occurs first; and (2) the Powertrain Limited Warranty, which covers the vehicle's major powertrain components (e.g., the "[e]ngine block and all internal parts"), and extends for 5 years or 60,000 miles, whichever occurs first. Compl. ¶¶ 47 n.14, 114; Walters Decl. Ex. A, at 3–5 (2009 Warranty & Maintenance Booklet). "Warranty coverage begins on the date the car is delivered to the first retail purchaser." *Id.* at 4.

The Warranty and Maintenance Booklet further provides that

> THESE WARRANTIES ARE LIMITED IN DURATION TO THE TIME PERIOD OF THE WRITTEN WARRANTIES. THESE WARRANTIES ARE IN LIEU OF ALL OTHER OBLIGATIONS, LIABILITIES OR WARRANTIES, WHETHER EXPRESS OR IMPLIED. ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE END AT THE SAME TIME COVERAGE ON THE PARTICULAR COMPONENT ENDS.

*Id.* at 7. No person is "authorize[d] to assume for any [Subaru entity] any

---

[1] The Court may consider this document without converting this motion to one for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that document integral to or explicitly relied on in complaint may be considered on motion to dismiss without converting motion into one for summary judgment).

4

obligations or liabilities greater than or different from those set forth in" the

Warranty and Maintenance Booklet. *Id.*

Those written warranties "do not cover any part which malfunctions, fails or

is damaged due to any unauthorized alteration or modification made to the car,"

"operating the vehicle in any competition or racing event," or "abuse." *Id.*

### C.    The Alleged Design Defect

Plaintiff's putative class includes two different vehicle models, the WRX

and the STi. Plaintiff alleges that the EJ255 and EJ257 engines in those vehicles

suffer from design defects in the pistons, the positive crankcase ventilation

("PCV") system, and the mapping of the engine's electronic control module

("ECM"). As more fully explained below, Plaintiff does not allege that SBR failed

to manufacture these components in accordance with the design specifications. To

the contrary, Plaintiff specifically alleges that these components were improperly

designed in light of the intended use of the vehicle. Compl. ¶ 31.

### D.    The Claims and Relief Sought

#### 1.    Proposed Nationwide Class

Even though his second-hand vehicle was out of warranty, Plaintiff brings

claims for "Breach of Uniform Commercial Code § 2-313: Express Warranty of

Merchantability" (Count I) and violation of the Magnuson-Moss Warranty Act, 15

U.S.C. § 2301(d)(1)(A) (Count III), on behalf a putative nationwide class. Compl.

¶¶ 21, 112–33, 147–60. Plaintiff seeks the application of New Jersey law to the

5

national class claims. Compl. ¶ 20.

### 2.    The Proposed California Subclass

In the alternative, Plaintiff brings these causes of action on behalf of a

putative California class:

| | |
|---|---|
| **Count II** | Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, (Cal. Civ. Code §§ 1792 and 1791.1, et seq.), *id*. ¶¶ 134–146; |
| **Count IV** | Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), *id*. ¶¶ 161–170; and |
| **Count V** | Violations of the California Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, et seq.), *id*. ¶¶ 171–182. |

SOA and SBR now move to dismiss Plaintiff's Complaint.

## III.    ARGUMENT

### A.    Plaintiff's breach of express warranty claim must be dismissed.

#### 1.    The express warranty on Mr. Thompson's vehicle expired prior to the alleged engine failure.

Plaintiff Thompson's breach of express warranty claim fails for the simple

reason that his vehicle performed as warranted and the vehicle warranty expired

well before the alleged engine failure.

"[T]o state a claim for breach of express warranty, [a p]laintiff[] must

properly allege: (1) that [the d]efendant made an affirmation, promise or

description about the product; (2) that this . . . promise . . . became part of the basis

of the bargain . . . ; and (3) that the product ultimately did not conform to the . . .

6

promise . . . ." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011). It is well-settled that the terms governing the length of an automotive warranty are enforceable and binding on purchasers. No cause of action for breach of warranty will lie if the alleged defect manifests only after the expiration of the warranty. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022–23 (9th Cir. 2008); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 617 (3d Cir. 1995) ("[A]n express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed."); *Merkin v. Honda N. Am., Inc.*, No. 17-cv-03625, 2017 WL 5309623, at *4 (D.N.J. Nov. 13, 2017) (dismissing warranty claim where "[p]laintiff did not experience starter issues until the warranty period had expired (three years old and had over 40,000 miles)"); *Alban v. BMW of N. Am.*, No. 09-cv-5398, 2011 WL 900114, at *9 (D.N.J. Mar. 15, 2011) (dismissing breach of warranty claim where vehicle owner alleged defect manifested after expiration of 4-year/50,000 mile warranty period); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 519–20 (D.N.J. 2008) (dismissing breach of warranty claims based on manifestation after expiration of warranty period); *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Cal. Ct. App. 2006)) ("[A] latent defect discovered after the warranty period has expired" cannot give rise to a claim, "even if the warrantor knew of the defect at the time of sale.").

SOA promised to cover defects in material or workmanship related to the

7

DMEAST #34611426 v3

powertrain in Mr. Thompson's vehicle for a period of five years or 60,000 miles under the Powertrain Limited Warranty. Compl. ¶ 4; Walters Decl. Ex. A, at 5 (2009 Warranty & Maintenance Booklet). SOA indisputably did so and Plaintiff does not allege that his vehicle failed to perform as warranted or that SOA failed to make any needed repairs during the warranty coverage period. Mr. Thompson alleges that his engine failed in "April 2015" with 68,995 miles on the vehicle's odometer. Compl. ¶ 14. Thus, Mr. Thompson's Powertrain Limited Warranty expired one year and nearly 9,000 miles before the alleged defect manifested.

Because Mr. Thompson's vehicle performed as warranted by SOA during the warranty period, SOA could not have breached its obligations under the Powertrain Limited Warranty. *See BK Trucking Co. v. Paccar, Inc.*, No. 15-cv-2282, 2016 WL 3566723, at *6 (D.N.J. June 30, 2016) (noting repairs needed after warranty expiration could not give rise to claim because "[d]efendants did not promise to make those repairs, so they could not have broken that promise"). Count I fails as a matter of law and must be dismissed.

> **2.    Mr. Thompson fails to plead adequately that the duration of the Powertrain Limited Warranty is unconscionable.**

In an attempt to resuscitate his untimely breach of express warranty claim, Mr. Thompson alleges that "[t]he warranties accompanying class vehicles were procedurally and substantively unconscionable under Uniform Commercial Code § 2-302 and other applicable state warranty laws." Compl. ¶ 76. That argument has

8

been rejected repeatedly, including by courts in this District.

"[T]here are two types of unconscionability: (1) unfairness in the formation of the contract (procedural unconscionability), and (2) excessively disproportionate terms (substantive unconscionability)." *In re Caterpillar, Inc.*, C13 & C15 Engine *Prod. Liab. Litig.*, No. 1:14-cv-3722, 2015 WL 4591236, at \*20 (D.N.J. July 29, 2015). "When considering procedural unconscionability, courts look to defects in the formation, namely, the parties' 'age, literacy, lack of sophistication,' and the presence of 'hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.' When considering substantive unconscionability, the question is more simply whether 'the exchange of obligations is so one-sided as to shock the court's conscience.'" *Id.* (quoting *Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, 357 F. Supp. 2d 788, 801 (D.N.J. 2005), and *Sitogum Holdings v. Ropes*, 352 N.J. Super. 555, 564 (Ch. Div. 2002)).

As an initial matter, "there is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty." *Nelson v. Nissan N.A., Inc.*, 894 F. Supp. 2d 558, 565–66 (D.N.J. 2012). In the face of claims of unconscionability, courts routinely uphold the propriety of warranties shorter than the five-year/60,000-mile warranty provided here by SOA. *See, e.g.*, *Smith v. Ford Motor Co.*, 462 F. App'x 660, 663 (9th Cir. 2011) (finding three-year/36,000 mile

9

warranty not unconscionable); *Merkin*, 2017 WL 5309623, at \*5 (rejecting claim that three-year/40,000-mile warranty was unconscionable); *In re Caterpillar, Inc.*, 2015 WL 4591236, at \*20 ("[T]he terms of the Engine Warranty, limiting the covered defects to material and workmanship and setting a durational limit of two years, are not categorically unconscionable."); *Knopke v. Ford Motor Co.*, 14-cv-2225, 2014 WL 5817326, at \*4 (D. Kan. Nov. 10, 2014) (declining to find five-year/60,000 mile durational warranty substantively unconscionable in light of industry standards); *Alban*, 2011 WL 900114, at \*9 (finding 4-year/50,000 mile warranty not unconscionable).

Bald assertions of unconscionability will not suffice under even Rule 8's plausibility standard. "To survive dismissal, plaintiffs must plead with particularity facts (rather than conclusions) showing that defendants' warranty limitations are unconscionable; further, such facts must be based on the best of plaintiffs' 'knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,' and meet the other requirements of Fed. R. Civ. P. 11(b)." *Pastor-Richard v. Goodman Glob., Inc.*, No. 2012-cv-268, 2013 U.S. Dist. LEXIS 191759, at \*5 (E.D. Ky. July 2, 2013); *see also Jarrett v. Panasonic Corp. N. Am.*, 8 F. Supp. 3d 1074, 1082 (E.D. Ark. 2013) ("Merely raising the specter of unconscionability" cannot overcome a motion to dismiss.). A plaintiff claiming a warranty's durational limitation is unconscionable must show that the contract was

10

unconscionable at inception, not in light of subsequent events. *See Knopke*, 2014 WL 5817326, at \*4.

Plaintiff attempts to allege unconscionability by setting forth a perfunctory list of assertions that lack any of the requisite details. He contends that a "disparity in the bargaining power of the parties" exists; that purchasers "lack[ed] knowledge that the class vehicles contained the Piston Ringland Defect"; that there was an "inability of class vehicle purchasers or lessees to bargain with the defendants to increase durational warranties"; a lack of knowledge; a lack of meaningful alternatives; a disparity in sophistication of the parties; unfair terms in the warranty; and the absence of effective warranty competition. Compl. ¶¶ 76–85.

While numerous, those assertions are unsupported by any actual facts and cannot survive a motion to dismiss. For example, Mr. Thompson does not plead anything to support procedural unconscionability. There is no allegation that Mr. Thompson was a minor, illiterate, or that the setting of his used vehicle purchase was oppressive or coercive. He also fails to plead why he supposedly "had no meaningful choice" in the warranty terms or how to square that accusation with his status as a second-hand purchaser who purchased his vehicle two years after the warranty had gone into effect. Nearly identical "bare-bones allegations" that a vehicle purchaser "had no meaningful choice in determining the time and mileage limitation, and that a gross disparity in bargaining power existed between him and

11

[the vehicle's manufacturer]" have been rejected as "no[thing] more than conclusions [that] are not entitled to the assumption of truth." *Alban*, 2011 WL 900114, at *7.

Nor does Mr. Thompson plead anything that could shock the judicial conscience to support a finding of substantive unconscionability. As noted before, "there is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty." *Nelson*, 894 F. Supp. 2d at 565–66. To this point, Mr. Thompson's unsupported allegation that Defendants knew of the alleged design defect at the time of his vehicle's purchase is irrelevant. Even if Defendants had this knowledge—and plaintiff's complaint contains no factual allegations in support of that claim—that does not permit Mr. Thompson to pursue his untimely claims. *See In re Caterpillar, Inc.*, 2015 WL 4591236, at *22; *Alban*, 2011 WL 900114, at *9 ("[T]he general rule, stated in *Duequesne*, prohibiting breach of warranty actions premised on defects that did not arise until after the warranty expired applies to Plaintiff's claims regardless of his assertion that BMW knew that his vehicle was defective before the time-limit took effect.").

For this additional reason, Count I fails as a matter of law and must be dismissed.

> ### 3. The Powertrain Limited Warranty does not cover the alleged design defect.

Mr. Thompson's warranty claims also fail because the Powertrain Limited

12

Warranty does not cover design defects. The warranty explicitly covers defects in "material or workmanship." Compl. ¶ 114. The warranty language, set out in the warranty booklet, provides:

> These warranties cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use . . . .
>
> Walters Decl. Ex. A, at 4 (2009 Warranty & Maintenance Booklet).

"[T]he vast weight of authority hold[s] that a workmanship and materials warranty *cannot* encompass a design defect claim." *Nelson v. Nissan N. Am., Inc.*, 2014 U.S. Dist. LEXIS 175224, at *7–9 (D.N.J. Dec. 19, 2014) (emphasis added). That is, express warranties covering defects in material or workmanship—like the warranties pleaded by Plaintiff here—do not cover design defects. *See Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750 (8th Cir. 2013) ("[w]here a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or workmanship.'"); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668–69 (9th Cir. 2013); *Mack Trucks Inc. v. BorgWarner Turbo Systems, Inc.*, 508 F. App'x 180, 184–85 (3d Cir. 2012) (finding that the ordinary meaning of "manufacture" does not include design); *Hindsman v. General Motors LLC*, No. 17-cv-05337-JSC, slip op. at 9–11 (N.D. Cal. June 1, 2018); *Robinson v. Kia Motors Am. Inc.*, 2015 U.S. Dist. LEXIS 121755, at *29–31 (D.N.J. Sep. 11,

13

2015); *Nelson*, 2014 U.S. Dist. LEXIS 175224, at *7–9.

Mr. Thompson tries to skirt this precedent by deliberately refusing to identify what kind of defect he is alleging. Instead, he attempts to obfuscate the issue by awkwardly pleading a defect in "materials, workmanship, manufacture, and/or design." *See generally* Compl. But a plain reading of the Complaint clears up any deliberate confusion. Plaintiff dedicated a section of the Complaint to discussing the "Redesign of Class Engine Components and Management System" where he explains in detail design choices he alleges to be the cause of the defect. Compl. ¶¶ 31–35. He devotes no such space to any alleged material or workmanship flaws. Indeed, nowhere in the Complaint does plaintiff allege that engines in the class vehicles were properly designed, but defectively manufactured.

Plaintiff alleges three causes of the alleged ringland issue: (1) improperly designed pistons; (2) the engine management system programming; and (3) the positive crankcase ventilation ("PCV") system. Compl. ¶¶ 4, 5 , 31, 33. Plaintiff criticizes SBR's decision to use cast, rather than forged pistons. Compl. ¶ 5. He also criticizes the use of hypereutectic aluminum silicon alloy in the pistons. Compl. ¶ 6. Those choices are unquestionably design decisions, and not any alleged failure to manufacture the engine to specification. Moreover, Plaintiff's allegation of "an inadequate PCV system" is also a design issue. *See* Compl. ¶ 7; *Hindsman,* No. 17-cv-05337-JSC, slip op. at 12 (holding allegation regarding PCV

14

system an alleged design defect). And finally, the ECM programming (Compl. ¶ 33) is a design, not a manufacturing issue. *See Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 WL 2976839, at \*19 (D.N.J. July 21, 2011) ("A defect in the programming of the software which controlled the voltage adjustments is not akin to a defect in materials or substandard workmanship used by Panasonic in replacing or repairing parts under warranty."). In other words, Plaintiff is not alleging that the engine, the ECU programming, or the PCV system fail to conform to their respective design specifications. Rather, he is criticizing the design choices themselves.

Plaintiff's express warranty claim cannot be salvaged by a deliberate refusal to identify which type of defect he is alleging. *See Nelson*, 2014 U.S. Dist. LEXIS 175224, at \*8; *Coba v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 136283, at \*29 (D.N.J. Sep. 30, 2016).

In *Nelson v. Nissan*, this Court rejected a similar breach of express warranty claim where that plaintiff alleged the class vehicles' transmissions were defective because the lead bushings used were vulnerable to high heat. In its analysis, the Court noted that "absent specific language to the contrary, design defects cannot be encompassed within the meaning of defects in workmanship or materials." *Nelson*, 2014 U.S. Dist. LEXIS 175382, at \*5 (quoting *Mack Trucks Inc.*, 508 F. App'x at 184). Finding that the allegedly defective lead bushings were "undisputedly

15

common to every Class Vehicle," their use was a design defect, not a manufacturing defect. *Id*. at *7–8.

Similarly, no claim can survive when a plaintiff has, "seemingly intentionally," pleaded that fuel tanks were generally defective and failed to specify whether the defect was in design or manufacturing. *Coba*, 2016 U.S. Dist. LEXIS 136283 at *29. Because all the facts presented showed the plaintiff was alleging a design defect, the Court rejected the breach of warranty claim because design defects were not covered by the express workmanship and materials warranty. *Id*.

Plaintiff, seemingly intentionally, fails to specify the type of defect alleged. Even so, the Complaint can support only a claim for design defect, which is not covered under the express warranty. Moreover, boilerplate allegations with respect to supposed manufacturing defects do not satisfy Rule 8's plausibility standard. *Hindsman*, No. 17-cv-05337-JSC, slip op. at 13 (finding conclusory allegations that "[v]ehicles suffer from a design defect and/or manufacturing defect" "fail to state enough facts to state a claim . . . that is plausible on its face" (internal quotation marks omitted)).

For these reasons, Mr. Thompson's claim must fail.

16

**4.    Defendant SBR made no express warranties to Mr. Thompson; the breach of warranty claims against SBR must be dismissed.**

Mr. Thompson's warranty-based claims against SBR also fail because SBR was not a party to the express written warranties.

As Mr. Thompson pleads, Compl. ¶ 114, and as the Warranty and Maintenance Booklet conspicuously states, "[t]hese warranties are made by Subaru of America, Inc. ("SOA"), Subaru Plaza, P. O. Box 6000, Cherry Hill, NJ 08034-600." Walters Decl. Ex. A, at 4 (2009 Warranty & Maintenance Booklet). There is no mention of SBR (at that time, known as "Fuji Heavy Industries Ltd.") as a warrantor in that document. *Id*. It is a fundamental precept of contract law that "nonparties to contracts cannot be held responsible for breach." *D.R. Horton Inc. v. Dynastar Dev., L.L.C.*, No. MER-L-1808-00, 2005 WL 1939778, at \*17 (N.J. Super. Ct. Law Div. Aug. 10, 2005).

Mr. Thompson's claims for breach of warranty against SBR must be dismissed.

**B.    Plaintiff's breach of implied warranty of merchantability claim under the Song-Beverly Consumer Warranty Act fails for several reasons.**

Plaintiff asserts a claim for breach of the implied warranty of merchantability under California's Song-Beverly Consumer Warranty Act., Cal.

17

DMEAST #34611426 v3

Civ. Code §§ 1790–1795.8 (Count VIII). That claim fails for several reasons.[2]

### 1.      Plaintiff lacks standing to bring an implied warranty claim under the Song-Beverly Act.

Contrary to his assertions, Compl. ¶ 137, Mr. Thompson's secondhand vehicle is not a "consumer good" as defined by Cal. Civ. Code § 1791(a). The Song-Beverly Act defines "consumer goods" as "any *new* product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a) (emphasis added). That definition does not include used automobiles. *See* Tentative Ruling Den. Pls.' Am. Motion for Class Certif., *Victorino v. FCA US LLC*, No. 16-cv-1617-GPC(JLB), 2018 U.S. Dist. LEXIS 92284, at *1 (S.D. Cal. June 1, 2018) (holding Song-Beverly Act does not apply to used vehicles purchased from authorized dealership); *Dagher v. Ford Motor Co.*, 190 Cal. Rptr. 3d 261, 271–72 (Ct. App. 2015); *Leber v. DKD of Davis, Inc.*, 187 Cal. Rptr. 3d 731, 732–35 (Ct. App. 2015).

Critically, Mr. Thompson affirmatively pleads his vehicle is not new and that he purchased it "pre-owned." Compl. ¶ 14. Accordingly, Mr. Thompson lacks standing to pursue relief for an implied warranty claim under Song-Beverly

---

[2] Mr. Thompson does not bring claims for breach of the implied warranty of merchantability pursuant to any state's Uniform Commercial Code or on behalf of the proposed nationwide class.

18

because the right to assert implied warranty claims under the Act did not transfer to him as a later used vehicle purchaser. *See Dagher*, 190 Cal. Rptr. 3d at 275–76.

Plaintiff's breach of implied warranty claim under Song Beverly fails as a matter of law and must be dismissed.

### 2.    Plaintiff's implied warranty of merchantability expired, at the latest, at the same time as his express warranty.

Alternatively, Mr. Thompson's Song-Beverly implied warranty claim must be dismissed because the maximum statutory duration of the implied warranty under Song-Beverly is one year from the date new consumer goods are purchased. *See* Cal. Civ. Code § 1791.1(c) ("The duration of the implied warranty of merchantability . . . shall be coextensive in duration with an express warranty which accompanies the consumer goods . . . but in no event shall such implied warranty have a duration . . . more than one year following the sale of new consumer goods to a retail buyer.."); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) ("The duration of an implied warranty of merchantability is one year if the express warranty is one year or more."). Mr. Thompson's claim thus fails because he alleges that he presented his vehicle to an authorized Subaru retailer with an engine failure well more than a year following his vehicle's original purchase. Compl. ¶ 14.

Even ignoring the one-year limitation on implied warranty claims under Song-Beverly, Plaintiff's claim would be time barred in any event because SOA

19

DMEAST #34611426 v3

properly limited the temporal scope of any implied warranties to that of its express warranty in accordance with the Magnuson-Moss Warranty Act ("MMWA"). [3] The express warranty accompanying his vehicle included this limitation on implied warranties:

> ANY IMPLIED WARRANTIES OF MERCHANT-ABILITY OR FITNESS FOR A PARTICULAR PURPOSE END AT THE SAME TIME COVERAGE ON THE PARTICULAR COMPONENT ENDS.

Walters Decl. Ex. A, at 7 (2009 Warranty & Maintenance Booklet) (emphasis in original). Any implied warranty of merchantability applicable to the vehicle's engine expired, at the latest, after five years or 60,000 miles.

Just as Mr. Thompson's express warranty claim is precluded because the defect manifested after its expiration, so too is his implied warranty claim precluded; Count II should be dismissed.

### C.    Plaintiff's Magnuson-Moss Warranty Act claim fails for the same reasons as his express and implied warranty claims.

Mr. Thompson also fails to state a claim for breach of warranty under the MMWA (Count III). The MMWA creates a cause of action for consumers damaged by the failure of a supplier, warrantor, or service contractor to comply

---

[3] Federal warranty law is no different. The MMWA, 15 U.S.C. §§ 2301, *et seq*., permits a manufacturer to limit the duration of implied warranties if the duration limitation is (1) conscionable and (2) disclosed in clear and unmistakable language prominently displayed on the face of the express warranty. 15 U.S.C. § 2308(b). Consistent with those requirements, SOA's express warranty contains a clear and prominent limitation on the duration of any implied warranties.

with any obligation under . . . a written warranty, implied warranty, or service contract." 15 U.S.C. § 3210(d); *McGarvey v. Penske Auto. Grp.*, No. 08-cv-5610-JBS-AMD, 2010 WL 1379967, at \*1 (D.N.J. Mar. 29, 2010). As noted above, Plaintiff has failed to allege adequately any such breach of warranty, implied or express, as alleged in Count I (on behalf of a proposed nationwide class) or Count II (on behalf of the proposed California state subclass).

Absent a specific regulatory provision of the Act, a claim for breach of warranty under the MMWA is, in substance, entirely derived from state law. *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011). The MMWA permits only claims for breach of an express warranty that constitute a "written warranty" under the Act. 15 U.S.C. § 2310(d)(2). Mr. Thompson's MMWA "written warranty" claims are substantively identical to his express and implied warranty claims, and must therefore be dismissed on the same bases. *See Temple v. Fleetwood Enters.*, 133 F. App'x. 254, 268 (6th Cir. 2005) ("[I]f there exists no actionable warranty claim, there can be no violation of the Magnuson-Moss Act."); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010) ("In the instant case, [plaintiff's] Magnuson-Moss claim is based upon his state law claims of breach of express and implied warranties. Since the District Court correctly dismissed both of those claims, [plaintiff's] Magnuson-Moss claim was also properly dismissed.").

DMEAST #34611426 v3

**D.**     **Plaintiff's statutory consumer fraud claims fail for several reasons.**

Plaintiff alleges violations of California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL") on behalf of the proposed California subclass. Neither can survive a motion to dismiss.

**1.**     **Plaintiff fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).**

Each of Plaintiff's statutory consumer fraud claims is subject to the heightened pleading standard of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."). The Complaint falls short on the important details required by Rule 9(b).

When fraud is alleged, the Rule 8 standard is enhanced by Rule 9(b), which commands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Specifically, the plaintiff must plead or allege the 'date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Granillo v. FCA US Ltd. Liab. Co.*, No. 16-cv-153-FLW-DEA, 2016 WL 9405772, at *5 (D.N.J. Aug. 29, 2016). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124. Similarly, claims of unconscionability are

22

subject to a heightened pleading standard and must be pleaded with specificity. *See Pastor-Richard*, 2013 U.S. Dist. LEXIS 191759, at *5. Plaintiff must state clearly the precise conduct underlying his fraud and unconscionability claims.

Mr. Thompson alleges both generalized omissions and unidentified affirmative misrepresentations. *See, e.g.*, Compl. ¶¶ 101–06 (alleging that Subaru "fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning class vehicles, including information concerning class engine Piston Ringland Defect," and that Subaru's supposed "misrepresentations diminish the vehicle value and increase cost of vehicle ownership"). Each is addressed separately.

### a.   Affirmative misrepresentations.

The Complaint pleads no actual statement, by any actual person, at any actual time. Instead, Plaintiff advances the naked assertion that Subaru made "fraudulent misrepresentations" amounting to "unfair and deceptive trade practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive." Comp. ¶¶ 37, 85.[4]

---

[4] It is not clear on the face of the Complaint that Plaintiff has intended to base his

23

DMEAST #34611426 v3

The Complaint does not identify what those alleged misrepresentations were, when they were made, or to whom they were made. Those bare recitations are untethered to any actual facts, and courts have dismissed similar claims in nearly identical situations. *See Kearns*, 567 F.3d at 1126 (affirming dismissal of UCL and CLRA claim when the plaintiff "fail[ed] to allege in any of his complaints the particular circumstances surrounding such representations"); *Beshwate v. BMW of N. Am., LLC*, No. 1:17-cv-00417-SAB, 2017 WL 4410169, at *13 (E.D. Cal. Oct. 4, 2017) (dismissing UCL and CLRA claims when the plaintiff did "not identify the time and place of the alleged misrepresentations or who the alleged misrepresentations were made by").

      **b.**    **Omissions-Based Claims.**

           **i.**    **Plaintiff's CLRA claim fails because he alleges no omission contrary to a representation made by Subaru.**

At the outset, Plaintiff fails to plead with particularity any omission by either Defendant that was contrary to the actual representations made in the Powertrain Limited Warranty. "[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty*, 51 Cal. Rptr. 3d at 126.

---

statutory fraud claims on alleged affirmative misrepresentations, and allegations to that affect are absent under Plaintiff's CLRA and UCL claims.

24

SOA warranted the vehicle's engine for 60,000 miles under the Powertrain Limited Warranty and Plaintiff alleges that his engine functioned properly through that period. Thus, any alleged omission about a potential latent defect could not have contradicted any affirmative representations in the express warranties made when Mr. Thompson's vehicle was originally sold. *See Daugherty*, 51 Cal. Rptr. 3d at 125–26. Plaintiff has simply pled no deceptive practice by Subaru and his CLRA claim must be dismissed.[5]

### ii.    Plaintiff fails to plead adequately any fraudulent omissions.

Parroting vague and unfounded conclusions, Plaintiff alleges that Defendants "omitted to disclose material matter regarding the defects in class vehicles as described in this complaint, including their impact on future repairs, operating costs and vehicle reliability as described in this complaint." Compl. ¶ 105. Plaintiff baldly asserts that Subaru "knew or should have known" of the alleged defect before selling Plaintiff's vehicle. Compl. ¶ 43. In an attempt to

---

[5] Plaintiff's CLRA claim should be also dismissed because Plaintiff did not file, concurrently with his complaint, "an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d). Importantly, "[i]f a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice." *Id*. Section 1780(d)'s affidavit requirement is not procedural and applies to actions brought in federal court. *See McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1055 (C.D. Cal. 2014).

25

support those unfounded assertions, Plaintiff relies on a handful of complaints posted on the National Highway Traffic Safety Administration's website (many of which do not apply to the Class Vehicles as defined by Plaintiff) and statements appearing in online forums that postdate the sale of Plaintiff's vehicle. *Compare* Compl. ¶ 1 (defining "Class Vehicles" as model year 2009 through 2014 Subaru WRX and WRX STi vehicles), *with id.* ¶ 30 (eight of ten quoted complaints made to NHTSA regarding model year 2008 vehicles), *and id.* 19–20 n.13 (citing online forum posts date-stamped "06-29-2015, 03:42 AM" and "08-19-2017, 03:24 PM").[6]

Those cited complaints were not made to Subaru and provide no support for Plaintiff's fraud claims. *See, e.g.*, *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013) (quoting *Friedman v. Am. Guardian Warranty Servs.*, 837 So.2d 1165, 1166 (Fla. Dist. Ct. App. 2003) ("Fraud based upon a failure to disclose material information exists only when a duty to make such disclosure exists.") (finding no duty to disclose alleged defect when plaintiff failed to allege plausibly knowledge of the defect before sale)).

Here, Plaintiff alleges no actual knowledge by anyone at Subaru, but elects

---

[6] The online forums cited and relied on by Plaintiff are attached as Exhibit C to the Walters Decl. Notably, those online forum posts cited by Plaintiff do not even demonstrate agreement among the participants on whether or not the alleged defect exists. Several posters question what is meant by "significantly high number" and others call the issue "a myth that doesn't exist." *See* Walters Decl. Ex. C, at 8, 12.

DMEAST #34611426 v3

to repeat generic allegations throughout the Complaint. Broad and generic statements that Subaru collects data and warranty information and maintains an internal quality management system cannot satisfy the heightened pleading standard of Rule 9(b) or even Rule 8's plausibility standard.[7] *See Gotthelf v. Toyota Motor Sales, U.S.A.*, 525 F. App'x 94, 104 (3d Cir. 2013).

In *Gotthelf*, a class action against Toyota alleging defective headlamps, the Third Circuit affirmed dismissal of statutory fraud claims where plaintiff alleged "that Toyota should have been aware of the [alleged] defect through its own '[b]ooks of [k]nowledge, internal testing, information on dealership repair orders, warranty data, [and] records of customer complaints.'" *Id*. The court ruled that such general allegations about a car company's business operations were insufficiently pleaded because the plaintiff did "not state when the alleged complaints were received, or to whom at Toyota these alleged complaints were sent." "Such conclusory allegations [were] insufficient to establish Toyota's knowledge, and concealment, of the [alleged] defect." *Id*.[8]

---

[7] The Court may take judicial notice of the fact that every automotive company collects warranty data and maintains a quality management system as required by federal regulations (e.g., TREAD Act and NHTSA's early warning reporting regulations, 49 C.F.R. §§ 579.1–.21). Therefore, Plaintiff's allegations say nothing about Subaru's requisite knowledge.

[8] The facts that Plaintiff must plead to state a claim on the merits must be consistent with the facts that Plaintiff advances to support his request for class certification. In this case, the lack of detail in Plaintiff's allegation about

27

The court further held that complaints made to NHTSA, and not the vehicle's manufacturer, were insufficient. The panel held that only when NHTSA launched an investigation and notified Toyota of that investigation could knowledge be imputed to Toyota. *Id*. Here, there has been no investigation by NHTSA into the alleged defect, and Plaintiff can point to nothing to support his allegation that either SOA or SBR received any of those complaints.

Likewise, Plaintiff's reference to online enthusiasts' forums is similarly unavailing. "Courts in this district have repeatedly found that consumer complaints on third-party websites are not sufficient to infer a manufacturer's knowledge of a product defect where there are no allegations that the manufacturer saw such complaints." *Granillo*, 2016 WL 9405772, at *9; *see also Fisher v. Honda N. Am., Inc.*, 2014 WL 2808188, at *5 (C.D. Cal. 2014) (finding allegations of consumer complaints on government website allegedly "tracked" by the defendant could not support presale knowledge); *Alban*, 2011 WL 900114, at *10–12 (declining to view service bulletins or other advisories, or statements made to third parties as admission of knowledge).

Plaintiff has pleaded no facts or specifics that establish who at SOA or SBR

---

knowledge of an alleged defect is compounded immeasurably by a class definition that spans a sales period of six years. Is Plaintiff suggesting that warranty data and NHTSA communications from vehicles *in use* would have been available *before* the first vehicles were sold? Such an argument strains credulity.

28

supposedly knew about the alleged defect or when that knowledge supposedly came about. His omissions-based fraud claims must be dismissed.

Plaintiff's California statutory fraud claims are insufficiently pleaded and should be dismissed.

### 2.  Plaintiff's fraud claims are an impermissible attempt to lengthen his expired Powertrain Limited Warranty.

Even if Plaintiff could allege greater specificity, the expiration of the warranty precludes his claims.[9] As previously noted, under both California and New Jersey law, no claim can lie if the supposed defect manifests after the expiration of the express warranty. Recognizing this obstacle, Plaintiff relies on statutory fraud claims in an improper attempt to extend the length of his express warranties. That approach has been expressly rejected by both New Jersey and California courts.

In *Perkins v. Daimler Chrysler Corp.*, the panel held that "recognizing a viable [consumer fraud] claim in the circumstances presented would essentially compel manufacturers and sellers to warrant their products and component parts beyond that to which the parties expressly agreed." 383 N.J. Super. 99, 113 (App. Div. 2006). In rejecting the plaintiff's claim, the panel noted that "to interpret the [statute], beyond its present scope, to cover claims that the component part of a

---

[9] For this reason, it would be futile to permit Plaintiff to amend the complaint in response to this motion.

29

product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of the contract which defined the length and scope of the warranty period." *Id*. Similarly, in *Daugherty*, the Court of Appeals held that no CLRA or UCL claim could stand where the engine at issue there functioned as warranted. 51 Cal. Rptr. 3d 118.

Such a claim is, moreover, another attempt by Plaintiff to argue unconscionability, for which he pleads no required, specific facts. Plaintiff may not extend his expired express warranties by alleging statutory fraud.

### 3. Plaintiff pleads no unfair practice under the UCL because his vehicle's engine functioned properly through the duration of the Powertrain Limited Warranty.

In yet another attempt to ignore the expiration of the express warranties, the Complaint alleges that "[a] modern passenger vehicle internal combustion engine is reasonably expected by the defendants, the proposed class representative and proposed class members to last the serviceable life of the vehicle that is in excess of 120,000 miles." Compl. ¶ 10. That allegation is irrelevant given the clear terms of the express warranties. And, in any event, the Complaint alleges no facts in support of that allegation. That the Warranty and Maintenance Booklet includes a routine service and maintenance schedule (*e.g.*, the replacement of drive belts, spark plugs, brake fluid, coolant, etc.) that extends beyond the warranty periods, *see* Walters Decl. Ex. A, at 28–29 (2009 Warranty & Maintenance Booklet),

30

creates no reasonable expectation that the vehicle is guaranteed to last 120,000 miles without repair. It certainly cannot support an allegation of fraud or unfair conduct. *See Clemens*, 534 F.3d at 1026–27 (rejecting UCL claim based on unsupported assertion that consumer expected engine's head gasket to outlast 36,000-mile warranty period); *Rubenstein v. The Gap, Inc.*, 222 Cal. Rptr. 3d 397, 404 (Ct. App. 2017) (rejecting UCL claim based on unsupported allegations that clothing store failed to live up to quality standard it had set for its brand), *review denied* (Nov. 29, 2017).

The only expectation Mr. Thompson could have had about his vehicle's engine was that SOA would ensure its proper functioning during the Powertrain Limited Warranty period, which is precisely what happened. *See Daugherty*, 51 Cal. Rptr. 3d at 130 (holding "the only expectation buyers could have had about the F22 engine was that it would function properly for the length of Honda's express warranty"), *as modified* (Nov. 8, 2006). "[T]he failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." *Id.*

31

4.       **Plaintiff's California Unfair Competition Law claim must be dismissed to the extent he seeks monetary damages and because he is not entitled to restitution from Defendants.**

Plaintiff's UCL claim must also be dismissed to the extent that he seeks damages unavailable under this statute. Cal. Bus. & Prof. Code § 17200, *et seq.* Restitution is the only measure of damages recognized by the UCL. *See Inline, Inc. v. Apace Moving Sys.*, 125 Cal. App. 4th 895, 898 (Ct. App. 2005). To the extent that other relief is sought (Compl. ¶ 170), it is unavailable and Plaintiff's claim should be dismissed.

Further, restitution is not available from SOA or SBR here because the third-party dealership—and not SOA or SBR—is the entity that received the money for repairing Plaintiff's vehicle. Compl. ¶ 14. Restitution is limited to situations in which the defendant directly took property from plaintiff. *Rosen v. Uber Tech., Inc.*, 164 F. Supp. 3d 1165, 1178 (N.D. Cal. 2016). Here, neither Defendant did so. Plaintiff's UCL claim must be dismissed for that additional reason.

E.       **Plaintiff's Complaint fails to plead which claims are asserted against which defendant.**

Plaintiff makes indiscriminate allegations against "Defendants" without specifically referring to either SOA or SBR. *See generally* Compl. To properly plead a cause of action in a case with multiple defendants, "the claims must be stated in a manner that specifies which defendant engaged in which specific acts that are alleged to give rise to liability." *Ramziddin v. Monmouth Cty. Sheriff*

32

DMEAST #34611426 v3

*Dep't*, 2010 U.S. Dist. LEXIS 42798, at \*20 (D.N.J. Apr. 30, 2010). Without each Defendant knowing what particular claims are made against them and on what specific grounds, both SOA and SBR will be prejudiced in defending against Plaintiff's general allegations.

Plaintiff's failure to clearly identify which allegations are made against which Defendant warrants dismissal. *See Shonk v. Fountain Power Boats*, 338 F. App'x 282, 287 (4th Cir. 2009) (affirming dismissal of warranty claim pleaded as a single count against three defendants (boat manufacturer, engine manufacturer, and boat component manufacturer) as violating Rule 10(b) and failing to meet Rule 8's pleading burden); *Kounelis v. Sherrer*, 2005 U.S. Dist. LEXIS 20070, at \*10 (D.N.J. Sept. 5, 2005) ("[I]n multiple defendant actions, the complaint must 'clearly specify the claims with which each individual defendant is charged.'") (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1248 (2d ed. 1990)).

"The Third Circuit has criticized 'the all too common shotgun pleading approach' to complaints." *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988)). The Eleventh Circuit has described four types of shotgun pleadings, one being "the sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which

33

acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Such shotgun complaints flout Rule 8(a)(2) and merit dismissal. *See Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011).

Mr. Thompson's complaint must additionally be dismissed for failing to satisfy the basic pleading standards of Rule 8(a)(2).

### F.    Plaintiff is not entitled to injunctive or declaratory relief.

In Count V of the Complaint, Plaintiff pleads an amorphous cause of action for "injunctive and declaratory relief." Compl. ¶¶ 183–86. As a threshold matter, Count V must be dismissed because "declaratory relief and injunctive relief, as their names imply, are remedies, not causes of action." *Cole v. NIBCO, Inc.*, No. 3:13-CV-07871 FLW, 2015 WL 2414740, at *15 (D.N.J. May 20, 2015) (citing *Chruby v. Kowaleski*, 534 Fed. App'x 156, 160 n.2 (3d Cir. 2013). That claim must also be dismissed because it is duplicative of the substantive legal claims raised in the Complaint and Plaintiff has otherwise failed to plead any plausible claim for breach of warranty or fraud. *See Cohan v. Pella Corp.*, No. 2:14-MN-00001-DCN, 2015 WL 6465639, at *15 (D.S.C. Oct. 26, 2015) (dismissing claim for declaratory relief for lack of substantive foundation); *F.D.I.C. v. OneBeacon Midwest Ins. Co.*,

34

883 F. Supp. 2d 754, 761–62 (N.D. Ill. 2012) (dismissing a declaratory relief claim that raised the same issue as a substantive legal claim already before the court).

### G.   Plaintiff Thompson lacks standing to pursue claims for vehicles he never owned or leased.

If any of Mr. Thompson's claims survive Subaru's motion to dismiss, those surviving claims must be trimmed to include only vehicles of the same model and year of Mr. Thompson's vehicle. Plaintiff lacks Article III standing to seek recovery for injuries he did not—and could not have—sustained. Plaintiff purchased only a 2009 Subaru Impreza WRX STi. Compl. ¶ 14. His claims relating to other Subaru models and model years must be dismissed under Rule 12(b)(1).

The need for standing does "not change in context of a putative class action . . . . Standing cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action." *Koronthaly v. L'Oreal USA, Inc.*, 2008 U.S. Dist. LEXIS 59024, at \*13 (D.N.J. July 25, 2008); *see also In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005) (holding "even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

A class representative does not have the requisite Article III standing where he seeks to bring claims based on products he has not owned or used. *David v.*

35

*Volkswagen Grp. of Am., Inc*., 2018 U.S. Dist. LEXIS 70284, at *7 (D.N.J. Apr. 26, 2018) (noting that "[i]n the context of putative class actions . . . this Court has previously held that a plaintiff has standing only for claims related to [vehicle models] he purchased or used," and dismissing claims brought by class representative concerning model year vehicles not owned by representative); *Semeran v. Blackberry Corp*., 2016 U.S. Dist. LEXIS 11864, at *9 (D.N.J. Feb. 1, 2016) (dismissing claims relating to smartphone models the lead plaintiff neither purchased nor used); *Green v. Green Mt. Coffee Roasters, Inc*., 279 F.R.D. 275, 280 (D.N.J. Dec. 20, 2011) (dismissing claims relating to any Keurig brewing systems the lead plaintiff did not purchase or use); *Lieberson v. Johnson & Johnson Consumer Cos*., 865 F. Supp. 2d 529, 537 (D.N.J. Sept. 21, 2011) (finding claims must be dismissed where based on baby bath products the lead plaintiff did not allege purchasing or using).

Here, Mr. Thompson seeks to assert warranty and tort claims related to various Subaru models and model years he did not lease or purchase. *Compare* Compl. ¶ 1, *with* Compl. ¶ 14. Mr. Thompson alleges only that he purchased a second-hand 2009 Subaru Impreza WRX STi. Compl. ¶ 14. As Plaintiff acknowledges, his vehicle has several material differences from other class vehicles that go well beyond simply being different model years. The two models that Plaintiff seeks to lump together as "class vehicles" use two different engines,

36

DMEAST #34611426 v3

known as the EJ255 and EJ257. Compl. ¶ 1. The EJ255 is used in Impreza WRX models, while the EJ257 is used in WRX STi models like Mr. Thompson's, *see* Compl. ¶ 1; Walters Decl. Ex. B, at § 12-3 (2009 Subaru Impreza Owner's Manual) (noting different engines used in WRX STi vehicles). The power output of the engines used across the purported class vary widely, *see* Compl. 3 n.5, with the EJ255 in the WRX producing 265 horsepower and the EJ257 in the STi producing 305 horsepower. Walters Decl. Ex. D, at 32 (2009 Impreza WRX/WRX STi Brochure). In fact, the two engines differ in many technical respects.

For example, the two engines have different compression ratios that result from the use of different pistons and cylinder heads, use different valve timing systems (AVCS vs. DAVCS), utilized different turbocharger boost pressures (13.3 psi vs. 14.7 psi), use different ECU programming, require different fuel (91 octane vs. 93 octane), and use different transmissions. Walters Decl. Ex. B, § 12-3 (2009 Subaru Impreza Owner's Manual) (noting compression ratio of 8.4:1 for the EJ255 and 8.2:1 for the EJ257); Ex. D, at 32 (2009 Impreza WRX/WRX STi Brochure) (noting differences in engine and drivetrain).

As a result, Plaintiff only has standing to assert claims relating to the 2009 Subaru Impreza WRX STi. Mr. Thompson does not allege to have purchased or used any vehicle other than this model and model year. Mr. Thompson lacks standing to bring claims for any model or model year vehicle he did not

37

purchase—particularly those equipped with the EJ255 engine—and is not entitled to obtain "back door" standing based on injury potentially suffered by unidentified class members. Mr. Thompson's claims as to all class vehicles he is not alleged to have owned or leased must be dismissed.

## IV.   CONCLUSION

For all these reasons, Defendants SOA and SBR respectfully request this Court enter an order dismissing the Complaint with costs.

Respectfully submitted,

Dated:      June 8, 2018

/s/ Neal Walters
Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
Sadé Calin (ID No. 231602017)
calins@ballardspahr.com
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
856.761.3400
856.761.1020 fax

Attorneys for Subaru of America, Inc. and
Subaru Corporation

38