Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
Sadé Calin (ID No. 231602017)
calins@ballardspahr.com
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
856.761.3400
856.761.1020 fax

Attorneys for Defendants Subaru of America, Inc.
and Subaru Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **Christopher Thompson**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Subaru of America, Inc. and Subaru Corporation,**<br><br>Defendants. | CIVIL ACTION NO. 1:18-CV-03736-NLH-JS<br><br>**Reply Brief in Further Support of Defendants Subaru of America, Inc. and Subaru Corporation's Motion to Dismiss (Fed. R. Civ. P. 12(B)(1), (6))**<br><br>Motion Date: August 20, 2018 |

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................... 1

II.    ARGUMENT ............................................................................................. 1

    A.    Plaintiff cannot pursue claims based on an engine failure that occurred *after* his warranty expired. ..................................................... 1

    B.    Plaintiff alleges design defects, which the warranty unambiguously does not cover. ............................................................ 4

    C.    Plaintiff lacks standing to pursue his untimely Song-Beverly Act claim. ...................................................................................... 8

    D.    Plaintiff's statutory fraud claims fail because neither SOA nor SBR had any opportunity to make misrepresentations or omissions to Plaintiff, who purchased his used vehicle from a non-Subaru dealership. ....................................................................... 10

    E.    Plaintiff cannot use the UCL or CLRA to rewrite the parties' warranty contract. ............................................................................ 12

    F.    Plaintiff's UCL claim fails because restitution—the only remedy available under the act—is not available to him. .................. 14

    G.    Plaintiff does not contest several arguments made by the Subaru Defendants, which may be granted as uncontested ........................... 14

III.    CONCLUSION ...................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) .........................................................12, 14

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
   2018 U.S. Dist. LEXIS 121185 (N.D. Ga. July 19, 2018) ...................................5

*Bardin v. DaimlerChrysler Corp.*,
   39 Cal. Rptr. 3d 634 (Ct. App. 2006) .........................................................11, 13

*Bruce Martin Constr., Inc. v. CTB, Inc.*,
   735 F.3d 750 (8th Cir. 2013) .................................................................................6

*Cirulli v. Hyundai Motor Co.*,
   No. 08-cv-0854, 2009 U.S. Dist. LEXIS 124670 (C.D. Cal. Nov. 9,
   2009) ....................................................................................................................10

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ..............................................................................2

*Coba v. Ford Motor Co.*,
   No. 12-cv-1622, 2016 U.S. Dist. LEXIS 136283 (D.N.J. Sep. 30,
   2016) ......................................................................................................................6

*Daugherty v. Am. Honda Motor Co.*,
   51 Cal. Rptr. 3d 118 (Ct. App. 2006) .........................................................1, 12

*Davidson v. Apple, Inc.*,
   No. 16-cv-4942, 2017 U.S. Dist. LEXIS 116436 (N.D. Cal. July
   25, 2017) ...............................................................................................................8

*Gutierrez v. Carmax Auto Superstores Cal.*,
   228 Cal. Rptr. 3d 699 (Ct. App. 2018) .........................................................12, 13

*Heber v. Toyota Motor Sales U.S.A., Inc.*,
   No. 16-cv-01525 (C.D. Cal. June 11, 2018)...................................................7, 13

*Hicks v. Kaufman & Broad Home Corp.*,
  107 Cal Rptr. 2d 761 (Ct. App. 2001) ..............................................................2, 3

*Johnson v. Nissan N. Am., Inc.*,
  272 F. Supp. 3d 1168 (N.D. Ca. 2017) ................................................................9

*Kas v. Mercedes-Benz U.S., LLC*,
  No. 11-cv-1032, 2012 U.S. Dist. LEXIS 196248 (C.D. Cal. Jan.
  19, 2012) ..............................................................................................................12

*Mack Trucks Inc. v. BorgWarner Turbo Sys. Inc.*,
  508 F. App'x 180 (3d. Cir. 2012) ......................................................................5, 6

*McCabe v. Daimler AG*,
  160 F. Supp. 3d 1337 (N.D. Ga. 2015)...........................................................10, 12

*Nelson v. Nissan N.A., Inc.*,
  894 F. Supp. 2d 558 (D.N.J. 2012) ......................................................................3

*Nissan Motor Co. v. Armstrong*,
  145 S.W.3d 131 (Tex. 2004) ...............................................................................11

*Preston v. Am. Honda Motor Co.*,
  No. 18-cv-38  (C.D. Cal. May 24, 2018)...............................................................8

*Robinson v. Kia Motors Am., Inc.*,
  No. 13-cv-006, 2015 U.S. Dist. LEXIS 121755 (D.N.J. Sep. 11,
  2015) ......................................................................................................................3

*Rochester-Genesee Reg'l Transp. Auth. v. Cummins, Inc.*,
  No. 09-CV-6370, 2010 U.S. Dist. LEXIS 75805 (W.D.N.Y. July
  28, 2010) ................................................................................................................6

*Rutledge v. Hewlett-Packard Co.*,
  190 Cal. Rptr. 3d 411 (2015) ...............................................................................3

*S. Gas & Gasoline Engine Co. V. Adams & Peters*,
  198 S.W. 676 (Tex. Civ. App. 1917)....................................................................6

*Sater v. Chrysler Grp. LLC*,
  No. 14-cv-00700, 2015 U.S. Dist. LEXIS 21022 (C.D. Cal. Feb.
  20, 2015) ................................................................................................................7

*In re Saturn I-Series Timing Chain Prod. Liab. Litig.*,
No. 1920, 2008 U.S. Dist. LEXIS 109978 (D. Neb. Nov. 7, 2008) ......................6

*Steele v. General Motors LLC*,
No. 17-cv-04323 (slip op. ) (C.D. Cal. Aug. 8, 2018)..................................10, 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ..............................................................15

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
2004 U.S. Dist. LEXIS 27086 (S.D.N.Y. June 23, 2004) ..................................11

*Troup v. Toyota Motor Corp.*,
545 F. App'x 668 (9th Cir. 2013) ..........................................................................7

*Victorino v. FCA US LLC*,
No. 16-cv-1617, slip op. (S.C. Cal. June 13, 2018)...............................................8

*Wilborn v. CarMax Auto Superstores Cal., LLC*,
No. 17-cv-1487, 2017 U.S. Dist. LEXIS 203597 (C.D. Cal. Dec.
11, 2017) ................................................................................................................1

*Williams v. BASF Catalysts LLC*,
11-cv-1754, 2012 U.S. Dist. LEXIS 175918 (D.N.J. Dec. 12, 2012) ................14

**Statutes**

Song-Beverly Consumer Warrany Act, Cal. Civ. Code §§ 1790-
1795.8.................................................................................................................8, 9

U.C.C. § 2-302 (Unif. Law Comm'n 2002)..............................................................4

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) .............................................................6, 7

Fed. R. Civ. P. 8 ......................................................................................................12

Fed. R. Civ. P. 9(b) .................................................................................................12

Fed. R. Civ. P. 12 ...............................................................................................9, 13

Fed. R. Evid. 201 ......................................................................................................9

Oxford Dictionary ...............................................................................................5

Restatement (Second) of Contracts § 208 (Am. Law Inst. 1981)...........................4

Restatement (Third) of Torts: Products Liability § 2(b) (Am. Law Inst.
       1998) ........................................................................................................5

## I.    INTRODUCTION

Plaintiff Christopher Thompson makes several errors of law and mischaracterizes certain of defendants Subaru of America, Inc. ("SOA") and Subaru Corporation's ("SBR") (collectively, the "Subaru Defendants") arguments in opposing the Subaru Defendants' motion to dismiss. Upon close examination, Plaintiff's opposition amounts to little more than a recapitulation of the unsupported and vague factual contentions in his Complaint. Besides those failings, Mr. Thompson has now also produced a declaration that contradicts portions of the Complaint by clarifying that he purchased his vehicle second-hand from a dealership unaffiliated with SOA, precluding his ability to pursue statutory implied warranty and consumer fraud claims.

## II.    ARGUMENT

### A.    Plaintiff cannot pursue claims based on an engine failure that occurred *after* his warranty expired.

Here, as in *Daugherty v. American Honda Motor Co.*, "[i]t is undisputed that the defect in the [plaintiff's] engine did not cause any malfunction in the automobile[] . . . within the warranty period," 51 Cal. Rptr. 3d 118, 122 (Ct. App. 2006). California law is clear and remains unchanged since *Daugherty*: "an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Wilborn v. CarMax Auto Superstores Cal., LLC*, No. 17-cv-1487, 2017 U.S. Dist. LEXIS 203597, at *18 (C.D. Cal. Dec. 11, 2017) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008)). Plaintiff attempts

to avoid this well-established rule by arguing that all class vehicles suffered from some unidentified "symptoms of degradation" during the warranty period. Pl.'s Br. 8. But the Complaint fails to allege a single fact regarding these ambiguous "symptoms," and Plaintiff alleges no actual engine malfunction during the warranty period. *See* Compl. ¶ 53. As the Ninth Circuit has observed, permitting such a breach of warranty claim to proceed would be anathema to the parties' contractual relationship because

> [e]very manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted.

*Clemens*, 534 F.3d at 1023.

Plaintiff further attempts to avoid this inescapable legal conclusion by relying on two cases that are either inapposite, or directly contrary, to plaintiff's argument. *See* Pl.'s Br. 9 (citing *Am. Honda Motor Co. v. Super. Ct.*, 132 Cal. Rptr. 3d 91, 99 (Ct. App. 2011) & *Hicks v. Kaufman & Broad Home Corp.*, 107 Cal Rptr. 2d 761, 771 (Ct. App. 2001)). *American Honda* dealt with the separate issue of predominance at the class certification stage, concluding that breach of warranty claims were "not amenable to class treatment." And, the rationale of *Hicks*, which concerned home foundations with "indefinite" useful lives, does not

apply here, and that court expressly distinguished cases like this one, noting that "[f]oundations . . . are not like cars or tires." 107 Cal. Rptr. 2d at 772; *see also Rutledge v. Hewlett-Packard Co.*, 190 Cal. Rptr. 3d 411, 426 (2015) (distinguishing *Hicks*, and "[a]pplying the rationale of *Daugherty* [in holding] HP . . . not liable for breach of warranty for those claims made after the expiration of the one-year warranty period.").

The fatal facts are not in dispute: Plaintiff experienced no malfunction with his engine, nor did he present his vehicle to SOA for repair, until after the expiration of his 5-year/60,000-mile warranty. He received the benefits promised to him for the time stated in the express warranty, and he fails to state a claim for breach. *See* Defs.' Br. 6–8 (collecting cases).

Nor does Mr. Thompson adequately allege any procedural or substantive unconscionability regarding the Powertrain Limited Warranty. *See* Defs.' Br. 8–12. "There is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty." *Nelson v. Nissan N.A., Inc.*, 894 F. Supp. 2d 558, 565–66 (D.N.J. 2012). Plaintiff's mere "allegations of unequal bargaining power with respect to the terms of the warranty . . . are insufficient to state a claim for unconscionability." *Robinson v. Kia Motors Am., Inc.*, No. 13-cv-006, 2015 U.S. Dist. LEXIS 121755, at *34 (D.N.J. Sep. 11, 2015).

Moreover, this point is moot, because Mr. Thompson did not purchase his vehicle from an authorized Subaru retailer, *see* Part II.C. *infra.* A used-car purchaser who negotiated nothing with SOA because he purchased his car from an unaffiliated third party simply cannot claim procedural or substantive unconscionability. Mr. Thompson was not a party to the warranty contract when it was executed as to the original owner, and he has now admitted that he did not communicate with an authorized Subaru representative when he later purchased the used vehicle. Plaintiff has no standing to attack the contract during formation. *See* Restatement (Second) of Contracts § 208 (Am. Law Inst. 1981) (noting unconscionability determined "at the time the contract is made"); U.C.C. § 2-302 (Unif. Law Comm'n 2002) (same).

Mr. Thompson's warranty had expired when his engine experienced a failure. Nothing in the Complaint or opposition brief permits him to pursue a breach of express warranty claim under an expired warranty.

### B.    Plaintiff alleges design defects, which the warranty unambiguously does not cover.

Despite awkward attempts to recharacterize his allegations, nothing in Mr. Thompson's opposition can change one key fact: the Complaint alleges a breach of warranty based solely on alleged design defects, which are not covered under the Powertrain Limited Warranty. Defs.' Br. 12–16. That warranty only covers "repairs needed to correct defects in material or workmanship reported during the

applicable warranty period." Walters Decl. Ex. A, at 4 (2009 Warranty & Maintenance Booklet). There is nothing ambiguous about that provision and courts routinely dismiss similar claims on the pleadings. *See*, *e.g.*, *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 121185, at *8 (N.D. Ga. July 19, 2018) ("[S]ince the Limited Warranty limited recovery to manufacturing defects, . . . express warranty claims based upon design defects must be dismissed."); *Mack Trucks Inc. v. BorgWarner Turbo Sys. Inc.*, 508 F. App'x 180, 184–85 (3d. Cir. 2012) (affirming that warranty was unambiguous and that plain meaning of "manufacture" does not include design); Defs.' Br. 13–14.[1]

To be clear, Plaintiff is not alleging that the materials used to manufacture his vehicle's pistons somehow deviated from SBR's intended design, or that the manufacturing process was not carried out as intended. Such claims—involving manufacturing defects—would be covered by the express warranty. Instead, the Complaint criticizes the design engineers' *selection* of materials from which to manufacture the pistons, and the method chosen in advance to manufacture them. *See* Pl.'s Br. 16. Such decisions plainly represent design choices. *See* Restatement (Third) of Torts: Products Liability § 2(b) (Am. Law Inst. 1998); *Design*, Oxford

---

[1] Plaintiff cannot contend that the limitation of the warranty to materials and workmanship is unconscionable. *In re Atlas Roofing*, 2018 U.S. Dist. LEXIS 121185, at *8 (rejecting attempt to simultaneously enforce express warranty and claim that no meeting of the minds occurred).

Dictionary ("A plan or drawing produced to show the . . . function or workings of a[n] . . . object before it is made."); *Design*, Black's Law Dictionary (10th ed. 2014) ("The pattern or configuration of elements in something . . . ."). Plaintiff's citation to *In re Saturn I-Series Timing Chain Product Liability Litigation*, No. 1920, 2008 U.S. Dist. LEXIS 109978 (D. Neb. Nov. 7, 2008), relies on unpublished and inapplicable Indiana law, and more recent Eighth Circuit precedent has cast it's holding into doubt, *see Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753–54 (8th Cir. 2013) (postdating *In re Saturn*, recognizing distinction between design defect and defect in materials or workmanship, and holding that "a design defect cannot also be a defect in material and workmanship"); *Coba v. Ford Motor Co.*, No. 12-cv-1622, 2016 U.S. Dist. LEXIS 136283, at *27 (D.N.J. Sep. 30, 2016) (rejecting *In re Saturn*).

Here, Plaintiff argues his warranty claims are based on the choices to "[1] cast [, rather than forge] the class engine pistons [2] from hypereutectic aluminum silicon (Al-Si) alloy." Pl.'s Br. 16–17. Both are pre-manufacturing design choices not covered by the Powertrain Limited Warranty. *See* Defs.' Br. 14–15; *see Mack Trucks*, 508 F. App'x at 184–58 (quoted by Pl.'s Br. 18) ("[T]he definition of 'workmanship' presupposes that the product being made or assembled has already been designed. Design is an earlier and distinct phase of . . . production not captured by the workmanship warranty."); *cf. Rochester-Genesee Reg'l Transp.*

DMEAST #35211898 v1                                    6

*Auth. v. Cummins, Inc.*, No. 09-CV-6370, 2010 U.S. Dist. LEXIS 75805, at \*21 (W.D.N.Y. July 28, 2010) (dismissing express warranty claims relating to design of piston when warranty covered defects in "material or workmanship"); *S. Gas & Gasoline Engine Co. V. Adams & Peters*, 198 S.W. 676, 678 (Tex. Civ. App. 1917) (noting warranty for "workmanship and material" did not cover the "design or plan of construction of various parts of the engine"). Further, Mr. Thompson does not even contest that his allegations concerning the ECU programming and PCV systems raise a design defect not covered by the warranty. *See* Pl.'s Br. 16–19.

It bears repeating: nowhere does Plaintiff allege a *manufacturing* defect; that is, "an imperfection in a product that departs from its intended design." *Manufacturing Defect*, Black's Law Dictionary. To the contrary, he criticizes the selection of the material and manufacturing process as intentional design choices. Despite Plaintiff's off-hand conclusory references to "manufacturing," his claims are plainly grounded in design criticisms. *See Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) ("Despite its scattered references to "materials", the gravamen of the complaint is that the Prius's defect resulted from the use of resin to construct the gas tanks, which is a design decision."); *Sater v. Chrysler Grp. LLC*, No. 14-cv-00700, 2015 U.S. Dist. LEXIS 21022, at \*11-13 (C.D. Cal. Feb. 20, 2015).

Courts consistently reject the types of claims asserted by Mr. Thompson here—an attempt to second-guess SBR's intended design and choice of materials—and they fail as a matter of law. *See, e.g.*, *Heber v. Toyota Motor Sales U.S.A., Inc.*, No. 16-cv-01525, slip op. at 8 (C.D. Cal. June 11, 2018) (dismissing, as not covered by the express warranty, claim premised on manufacturer's decision to use soy wiring); *Preston v. Am. Honda Motor Co.*, No. 18-cv-38, slip op. at 4 n.1 (C.D. Cal. May 24, 2018) (same); *Davidson v. Apple, Inc.*, No. 16-cv-4942, 2017 U.S. Dist. LEXIS 116436, at *81 (N.D. Cal. July 25, 2017) (dismissing warranty claims criticizing "materials used in the iPhone's external casing" and holding "Plaintiffs cannot state a . . . claim because the Limited Warranty excludes defects in design and Plaintiffs allege only a design defect claim."). Similarly, Mr. Thompson's breach of express warranty claim must be dismissed.

### C.   Plaintiff lacks standing to pursue his untimely Song-Beverly Act claim.

Plaintiff's reliance on Cal. Civ. Code § 1795.5's "used consumer goods" provision is unavailing because "section 1795.5 does not support Plaintiff's argument that the Song-Beverly Act applies to used vehicles purchased by class members from [a manufacturer's] authorized dealerships." *Victorino v. FCA US LLC*, No. 16-cv-1617, slip op. at 28–29 (S.C. Cal. June 13, 2018). Mr. Thompson's claim is even more tenuous because he did not purchase his used car from an authorized Subaru retailer.

In the Complaint, Plaintiff alleges he purchased his used vehicle from "a California Subaru dealer." Compl. ¶ 14. However, Plaintiff now clarifies, by declaring under penalty of perjury, that he did not purchase his vehicle from an authorized Subaru retailer. The declaration accompanying Plaintiff's opposition brief states that Plaintiff "purchased [his] 2009 Subaru WRX STi from Handlees [*sic*] Nissan in Davis . . . , California." Thompson Decl. ¶ 3, ECF 21-2.[2]

Hanlees Nissan is not an authorized Subaru retailer with a franchise relationship with SOA. It is a Nissan authorized retailer. *See* Walters Supp. Decl. Ex. E (Hanlees Nissan Occupational License Status Info. Sys.); Ex. F (Nissan USA Dealer Page for Hanlees Nissan); Ex. G (Hanlees Nissan About Us Page).[3] Hence, neither SOA nor SBR played any role in that sale, and Plaintiff lacks standing

---

[2] Plaintiff in effect asks the Court to accept his Cal. Civ. Code § 178 Declaration as part of the pleading to avoid dismissal of his CLRA claims for failure to file the required venue affidavit. Pl.'s Br. 27 n.18. Accordingly, this Court may consider the contents of the Thompson Declaration, ECF 21-2, when analyzing the Subaru Defendants' Rule 12(b)(6) motion to dismiss, as a document integral to and referenced by the Complaint.

[3] Subaru requests that the Court take judicial notice of the fact that Hanlees Nissan is an authorized Nissan Dealership. That fact is generally known and not subject to reasonable dispute, and it can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201. The California Department of Motor Vehicles' Occupational License Status Information System is a public website that is reliable and not subject to reasonable dispute. Likewise, Nissan USA's dealer page is reliable and not subject to reasonable dispute.

under Song-Beverly. *See Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1178–79 (N.D. Ca. 2017) (addressing used car purchase from third-party retailer and holding "[b]ecause the Song-Beverly Act does not create any obligation on behalf of Nissan, the original car manufacturer, with respect to used goods, I GRANT Nissan's motion to dismiss Ms. Johnson's implied warranty claim.").

Plaintiff lacks standing to pursue his Song-Beverly claim, which is untimely in any event because it is based on an alleged defect that did not manifest until after the expiration of both the Act's 1-year statutory implied warranty period and SOA's 5-year/60,000-mile express warranty period. Defs.' Br. 19–20.

**D.      Plaintiff's statutory fraud claims fail because neither SOA nor SBR had any opportunity to make misrepresentations or omissions to Plaintiff, who purchased his used vehicle from a non-Subaru dealership.**

As a matter of common sense, SOA and SBR cannot be held liable for any representations or omissions made by persons at a Nissan dealership not under Defendant's control. And, the Subaru Defendants could not have omitted material facts from communications between Mr. Thompson and an unaffiliated third party. *See Steele v. General Motors LLC*, No. 17-cv-04323, slip op. at 6, (C.D. Cal. Aug. 8, 2018) (dismissing CLRA claim against General Motors by plaintiff who purchased used vehicle from Mercedes-Benz dealership for lack of reliance); *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1351–52 (N.D. Ga. 2015) (dismissing consumer fraud claim when the plaintiff purchased used vehicle from

third party with no relationship to the defendant); *Cirulli v. Hyundai Motor Co.*, No. 08-cv-0854, 2009 U.S. Dist. LEXIS 124670, at *10 (C.D. Cal. Nov. 9, 2009) ("CLRA claims based on failures to disclose may only be maintained if there is some 'relationship between the plaintiff and defendant in which a duty to disclose can arise.'" (quoting *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Ct. App. 1997))); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 149 (Tex. 2004) (finding no error in dismissing the plaintiff's fraud claims when she had "obtained her car from her parents six years after they bought it from Nissan" and "Nissan had no involvement or pecuniary interest in the transaction," meaning Nissan had "no duty to disclose" any defect); *Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 648–49 (Ct. App. 2006) (dismissing CLRA claim because the manufacturer had no duty to disclose that it used steel in vehicles' exhaust manifolds instead of cast iron). The Complaint is devoid of any allegations establishing what, if any, "channels of information [Mr. Thompson] depended on and whether [Subaru] could have taken action to disseminate information about [the alleged defect] through those channels. *Steele*, No. 17-cv-04323, slip op. at 6; *see generally* Compl.

The statutory fraud claims against SBR are even more tenuous because SBR does not sell, distribute, market, warrant, or service Subaru vehicles in the United States, and could never have omitted or misrepresented any information to Plaintiff

in marketing materials, during a sale transaction, or otherwise. *See Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 2004 U.S. Dist. LEXIS 27086, at *5 (S.D.N.Y. June 23, 2004). Nor could SBR have had a duty to avoid making any omission or misrepresentation in the first place. *See McCabe*, 948 F. Supp. 2d at 1370; *Kas v. Mercedes-Benz U.S., LLC*, No. 11-cv-1032, 2012 U.S. Dist. LEXIS 196248, at *5 (C.D. Cal. Jan. 19, 2012) (dismissing CLRA and UCL claims against foreign parent because no transaction ever occurred between parent and Plaintiff).

Under these facts—where neither Defendant had a duty or opportunity to communicate with Plaintiff at the time of sale—Mr. Thompson cannot plead fraud to satisfy even the basic pleading requirements of Rule 8, much less with the particularity required by Rule 9(b).

### E.   Plaintiff cannot use the UCL or CLRA to rewrite the parties' warranty contract.

Where an engine functions as warranted, no claim can be stated under the CLRA or UCL. *Daugherty*, 51 Cal. Rptr. 3d at 126–29.[4] Contrary to Plaintiff's contention, merely alleging a safety concern does not permit a Plaintiff to rewrite the durational limits of an express warranty or to impose indefinite liability upon a

---

[4] Plaintiff is incorrect in stating that his UCL claim is subject to the discovery rule, Pl.'s Br. 32, and that claim is time-barred. *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1323 (C.D. Cal. 2013).

defendant.[5] *See Gutierrez v. Carmax Auto Superstores Cal.*, 228 Cal. Rptr. 3d 699, 721 (Ct. App. 2018) ("[N]either *Bardin* nor *Daugherty* actually held sellers of automobiles are subject to an independent duty to disclose safety concerns.").

Here, the Subaru Defendants were not in a fiduciary relationship with Mr. Thompson. *See* Part II.C. *supra*. Nor has Plaintiff adequately pleaded that the Subaru Defendants had exclusive knowledge of the alleged design defects or that they actively concealed or misrepresented any facts to Plaintiff at the time of sale. *Id*; Defs.' Br. 25–29.[6] As previously noted, general allegations about a defendant's business operations are "insufficient to establish . . . knowledge, and concealment, of the [alleged] defect." *Toyota Motor Sales*, 525 F. App'x at 104. The same is true for posts made to unaffiliated enthusiast websites in 2015 and 2017. Defs.' Br. 26.

No independent duty to disclose existed and Plaintiff has failed adequately to plead his statutory fraud claims. Plaintiff inherited the balance of the 5-

---

[5] The safety contention appears much more prominently in Plaintiff's opposition than in the Complaint. Moreover, the Subaru Defendants dispute that any defect exists at all—let alone a safety-related defect. Indeed, the Complaint contains no allegation of any NHTSA investigation or a recall ordered or implemented.

[6] Plaintiff argues, strangely, that "Subaru's motion does not dispute prior knowledge of the Piston Ringlands Defect," Pl.'s Br. 6. Of course, a Rule 12 motion to dismiss is not the place for denials and admissions of allegations in a complaint. Nonetheless, to be clear, the Subaru Defendants specifically *deny* all such allegations and note that the motion to dismiss does in fact challenge the adequacy of Plaintiff's pleading with respect to presale knowledge, Defs.' Br. 25–27.

year/60,000-mile Powertrain Limited Warranty provided to his vehicle's original purchaser. On the face of the Complaint, his vehicle performed as warranted and represented by SOA. Compl. ¶ 14. Plaintiff alleges no unfair practice or misrepresentation. *See* Defs.' Br. 29–31

### F.   Plaintiff's UCL claim fails because restitution—the only remedy available under the act—is not available to him.

A plaintiff that purchases his vehicle from a third party cannot recover restitution under the UCL and such claims are subject to dismissal. *Asghari*, 42 F. Supp. 3d at 1324–25. Plaintiff asserts that Subaru "deprived [him] . . . of economic value by deceptively maintaining a higher purchase price . . . above the true value." Pl.'s Br. 36–37. However, the authority cited by Plaintiff—contending that restitution may be appropriate "as long as it is reasonable to infer that the defendant indirectly received that money from the third party," Pl.'s Br. 36—is inapplicable here. It would be unreasonable to assume, and the Complaint does not allege, that either SOA or SBR received any monetary benefit from Mr. Thompson's purchase of a used vehicle from a third-party Nissan dealership.

### G.   Plaintiff does not contest several arguments made by the Subaru Defendants, which may be granted as uncontested.

Plaintiff does not contest some of the Subaru Defendants' arguments, including his lack of Article III standing to pursue claims regarding vehicles other than the model-year 2009 WRX STi. Defs.' Br 35–38. Nor does he contest that his warranty claims against SBR must be dismissed because SBR was not a party to

the warranty contract. Defs.' Br. 17. Those portions of the Subaru Defendant's motion to dismiss may be granted as uncontested. *See Williams v. BASF Catalysts LLC,* 11-cv-1754, 2012 U.S. Dist. LEXIS 175918, at \*63 (D.N.J. Dec. 12, 2012) ("As their brief in opposition is completely silent on the issue, Plaintiffs may be understood by the Court to have abandoned their fraud on the court claim."); *accord Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

## III.   CONCLUSION

For the foregoing reasons, and the reasons set forth in their moving papers, the Subaru Defendants respectfully request that the Court grant their motion to dismiss Plaintiff's Complaint.

Respectfully submitted,

Dated:      August 13, 2018

*/s/Neal Walters*
Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
Sadé Calin (ID No. 231602017)
calins@ballardspahr.com
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
856.761.3400
856.761.1020 fax

Attorneys for Subaru of America, Inc. and Subaru Corporation